IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MICHAEL CALVIN,

                        Plaintiff,          Civil Action No.
                                            9:12-CV-1846 (GLS/DEP)

        v.

BRIAN FISCHER, *et al.*,

                        Defendants.

_____

APPEARANCES:                             OF COUNSEL:

FOR PLAINTIFF:

MICHAEL CALVIN, *Pro Se*
91-A-0715
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN              MICHAEL G. McCARTIN, ESQ.
New York State Attorney General        Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Michael Calvin, a New York State prison inmate, has commenced this action against various individuals employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), pursuant to 42 U.S.C. § 1983, alleging a deprivation of his civil rights. Construed liberally, plaintiff's amended complaint asserts an Eighth Amendment claim based upon defendants' alleged failure to protect him from an assault by other prison inmates.

Currently pending before the court is a motion brought by defendants seeking the entry of summary judgment in their favor. In their motion, defendants contend that plaintiff's claims are subject to dismissal on a variety of grounds, both procedural and substantive. Because I conclude that plaintiff's claims are barred by the applicable statute of limitations and there is no record evidence from which a reasonable factfinder could conclude that defendants were aware of any specific threats against plaintiff prior to the alleged assault, I recommend that defendants' motion be granted.

I.    BACKGROUND[1]

Plaintiff is a New York State prison inmate currently being held in the custody of the DOCCS. *See generally* Dkt. No. 13. While he is now incarcerated in the Green Haven Correctional Facility, located in Stormville, New York, at the times relevant to his claims in this action, plaintiff was confined in the Clinton Correctional Facility Annex ("Clinton"), located in Dannemora, New York. *Id.*

Plaintiff alleges that he was sexually assaulted by two inmates in a Clinton bathroom in the early hours of January 12, 2009.[2] Dkt. No. 13 at 4; Dkt. No. 81-3 at 34-48. During the assault, plaintiff was rendered unconscious and did not regain consciousness until he was being treated by outside medical personnel.[3] Dkt. No. 13 at 4; Dkt. No. 81-3 at 48. Although plaintiff shouted for help during the assault, he acknowledges that his shouts were not very loud because he was being choked by one of

---

[1]    In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

[2]    On several occasions, including in his amended complaint, plaintiff has alleged that this incident occurred on January 11, 2009. *See, e.g.,* Dkt. No. 13 at 3. At his deposition in this matter, however, plaintiff clarified that the incident actually occurred on January 12, 2009. Dkt. No. 81-3 at 75-76, 82-83.

[3]    Although in his amended complaint plaintiff alleges that he "regain[ed] full consciousness while in the emergency room of [the] [h]ospital," Dkt. No. 13 at 4, he testified at his deposition that his "next recollection" after the assault is when he was talking with medical personnel inside an ambulance. Dkt. No. 81-3 at 48.

his inmate-assailants. Dkt. No. 81-3 at 44-45. Plaintiff does not recall any DOCCS staff coming into the bathroom to assist him during or after the assault. *Id.* at 48.

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action on or about December 17, 2012, by the filing of a complaint and an accompanying application to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. Pursuant to 28 U.S.C. §§ 1915(e), 1915(A), then-Chief Judge Gary L. Sharpe undertook an initial review of plaintiff's complaint and directed that it be dismissed, with leave to replead. Dkt. No. 8. Plaintiff submitted an amended complaint on July 5, 2013. Dkt. No. 13. In that amended complaint, plaintiff named several defendants, including (1) Brian Fischer, the DOCCS Commissioner; (2) Doris Ramirez-Romero, Commissioner of Mental Health for the DOCCS; (3) Joann Waldren, the Mental Health Unit Chief at Clinton; (4) Stephen Racette, the current Superintendent at Clinton; (5) Stephen Brown, the current Deputy Superintendent of Security at Clinton; (6) John Doe #1, and (7) John Doe #2. *Id.*; Dkt. Nos. 21, 22, 46. The court thereafter accepted the amended complaint for filing, dismissed the defendants named in the original complaint, and construed the amended complaint as asserting an Eighth Amendment failure-to-protect claim against the newly named defendants.

[Dkt. No. 18](#).

Following the close of discovery, the court dismissed defendants John Doe #1 and John Doe #2 from the action based on plaintiff's failure to identify them. Dkt. No. 75. On April 24, 2015, the remaining defendants filed a motion seeking the entry of summary judgment in their favor, arguing that dismissal is warranted because (1) the applicable statute of limitations expired prior to commencement of the action; (2) plaintiff failed to exhaust the available administrative remedies before filing suit; (3) there is no evidence that defendants were aware of a specific threat against plaintiff prior to the alleged assault in January 2009; (4) defendants were not personally involved in determining plaintiff's mental health diagnosis and status; and (5) defendants are entitled to qualified immunity from suit. [Dkt. No. 81-29](#). Defendants' motion, which plaintiff has opposed and is now fully briefed, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.     DISCUSSION

    A.     Legal Standard Governing Motions for Summary Judgment

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial

burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Statute of Limitations

In his complaint, plaintiff alleges that defendants Fischer, Racette, Brown, Waldren, and Ramirez-Romero failed to protect him from the sexual assault by other inmates in January 2009, despite knowing that he "shared an excessive risk of attack by other inmates." Dkt. No. 13 at 3. As a threshold procedural matter, defendants argue that plaintiff's claim is time-barred. Dkt. No. 81-29 at 5. Plaintiff concedes this point in his

7

amended complaint, but argues that he should receive the benefit of equitable tolling due to his "impaired mental condition." Dkt. No. 13 at 6.

Plaintiff's claims in this action are brought pursuant to 42 U.S.C. § 1983. Dkt. No. 13 at 2. The applicable limitations period for a section 1983 action is derived from the general or residual statute of limitations for personal injury actions under the laws of the forum state. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *accord*, *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). Accordingly, in New York, the statute of limitations for a section 1983 action is three years. N.Y. C.P.L.R. § 214(5); *see also Connolly v. McCall*, 254 F.3d 36, 40-41 (2d Cir. 2001) ("[The plaintiff's] federal constitutional claims, brought pursuant to 42 U.S.C. § 1983, are governed by New York's three-year statute of limitations for personal injury actions[.]"); *see also*, *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1138, 1156 (2d Cir. 1995). "Federal law, however, governs the determination of when the statute of limitations begins to run." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015).[4] A claim arising under section 1983 accrues "when the plaintiff knows or has reason to know of the harm that he seeks to redress." *Connolly*, 254 F.3d at 41 (quotation marks omitted).

---

[4]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

For purposes of gauging the timeliness of his claims, and in light of the prisoner mailbox rule governing *pro se* prisoner complaints in this circuit, plaintiff's complaint in this case is deemed to have been filed on December 5, 2012, the date his IFP application was signed, Dkt. No. 2 at 3, Dkt. No. 8 at 5, rather than the date upon which the clerk of the court received it.[5] Dkt. No. 1 at 25; *see Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a *pro se* prisoner's notice of appeal is deemed filed on the date that the prisoner "deliver[s] it to the prison authorities for forwarding to the court clerk," rather than when it is received by the court clerk); *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (applying *Houston*, which analyzed the date of "filing" in a habeas corpus case, to cases arising under section 1983); *Torres v. Irvin*, 33 F. Supp. 2d 257, 270 (S.D.N.Y. 1998) ("Absent evidence to the contrary, the Court assumes that the prisoner gave his petition to prison officials for mailing on the date that he signed it." (alterations omitted)); *accord*, *McPherson v. Burge*, No. 06-CV-1076, 2009 WL 1293342, at *9 (N.D.N.Y. May 5, 2009) (Suddaby, J.) (citing cases); *but see Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) (suggesting that the operative filing date is that on which the

---

[5]    The clerk received the filing on December 17, 2012. Dkt. No. 2 at 2.

9

court clerk receives the pleading).[6] Plaintiff's failure-to-protect cause of action asserted against defendants accrued in this case on January 12, 2009, the date on which plaintiff alleges he was assaulted by other prison inmates. [Dkt. No. 13 at 4-5]. Given the three-year statute of limitations, plaintiff was required to file this lawsuit no later than January 12, 2012. Because plaintiff did not file his complaint until December 5, 2012, his claims are time-barred unless equitable tolling applies, extending his time to file suit.

The tolling of the statute of limitations for section 1983 claims is governed by state law tolling provisions, which, in New York, are construed "as narrowly as possible." *Wallace v. Kato*, 549 U.S. 384, 394

---

[6]     In *Grullon*, the Second Circuit rejected the district court's finding that granting the plaintiff leave to amend would be futile. *Grullon*, 720 F.3d at 141. Specifically, the district court found that, where the plaintiff's letter to the defendant was dated April 18, and the complaint was dated May 1, the plaintiff had failed to give the defendant the requisite fifteen days (under the Connecticut state law) to act prior to filing his lawsuit. *Id.* In its decision reversing the district court, the Second Circuit said the following:

> First, although the court assumed *arguendo* (quite generously) that [the plaintiff's l]etter dated April 18 would have been received by the Warden on that date, the finding that the complaint that was 'dated' May 1, . . . was 'filed' on May 1, . . . is contrary to the district court records. The complaint as it appears in the record was date-stamped by the district court as 'FILED 2010 MAY 18'; and the district court docket sheets state that the complaint was filed on May 18.

*Id.* Following this finding by the Second Circuit, it is unclear whether the mailbox rule, as articulated by the Supreme Court and applicable to habeas cases, remains viable in section 1983 cases, as articulated by the Second Circuit in *Dory*.

(2007); *Overall v. Estate of Klotz*, 52 F.3d 398, 404 (2d Cir. 1995). Plaintiff contends that he is entitled to equitable tolling due to his "impaired mental condition." *See*, *e.g.*, Dkt. No. 13 at 6. New York law tolls the statute of limitations for persons suffering from "insanity at the time the cause of action accrues." N.Y. C.P.L.R. § 208; *McAdoo v. Jagiello*, No.10-CV-355, 2011 WL 1577236, at *4 (N.D.N.Y. Apr. 26, 2011) (Hurd, J.). The tolling period extends for three years after the period of insanity ends. *McAdoo*, 2011 WL 1577236, at *4. A plaintiff seeking the application of equitable tolling based on mental illness bears the burden of "offer[ing] a 'particularized description of how her condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights.'" *Bolarinwa v. Williams*, 593 F.3d 226, 232 (2d Cir. 2010) (quoting *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000)); *see also McCarthy v. Volkswagen of Am.*, 435 N.E.2d 1072, 1074 (1982) (finding that section 208 is available "only to those individuals unable to protect their legal rights because of an over-all inability to function in society").

In determining whether a party has suffered from insanity within the meaning of the statute, a court must consider "all surrounding facts and circumstances relevant to the claimant's ability to safeguard his or her legal rights." *Cerami v. City of Rochester Sch. Dist.*, 624 N.E.2d 680, 682

(1993);[7] *see also Bolarinwa*, 593 F.3d at 232 ("[D]etermining whether equitable tolling is warranted in a given situation is a highly case-specific inquiry." (quotation marks omitted)). "[M]ental illness alone [is] insufficient to invoke the tolling provision of [section] 208; the mental disability must be severe and incapacitating." *McEachin v. City of N.Y.*, No. 03-CV-6421, 2007 WL 952065, at *4 (E.D.N.Y. Mar. 29, 2007) (quotation marks omitted).[8]

In this case, the record is devoid of any evidence from which a reasonable factfinder could conclude that plaintiff suffered from a condition that adversely affected his legal rights either at the time his claim accrued, on January 12, 2009, or afterwards. In his amended complaint, addressing his mental condition, plaintiff alleges the following:

> Due to plaintiff['s] 'impaired mental condition' the filing period should be to[ll]ed, and this complaint deem timely filed. It is plaintiff['s] contention that immediately prior to the filing period of this complaint, he became depress[ed] and suffered severe mental[] illness because of the rape. Plaintiff sought counseling from the mental health

---

[7]     *Cerami* examined New York Workers' Compensation Law § 28, which requires claims be submitted within two years from the date of the accident giving rise to the claim. *Cerami*, 624 N.E.2d at 681. The New York Court of Appeals determined that the analysis governing that provision is the same as that applicable to section 208. *Id.* at 682.

[8]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

counselors within the department of correction. Plaintiff urges that his failure to file in a timely manner should be excused because of his mental incapacity . . . . Plaintiff is mentally distraught since the rape. Plaintiff remain[s] under the specific care of the Mental Health Department of the Department of Correction . . . . Since the rape, plaintiff became so distraught mentally, that he was and is unable to protect his right[s] by pursuing this claim without assistance.

Dkt. No. 13 at 6-7. At his deposition, plaintiff testified that "sometime after the rape, [his] mind [was] like [he had] emotional problems." Dkt. No. 81-3 at 90. Without more, these allegations do not give rise to a genuine dispute of material fact with respect to whether plaintiff's "emotional problems" affected his legal rights or his overall ability to function in society. Plaintiff's contention that, due to his mental condition, he was unable to purse his legal rights is undetermined when considered in conjunction with the multiple letters written by him after the alleged assault to various DOCCS personnel or entities. For example, plaintiff wrote a letter to the DOCCS Central Office, dated February 15, 2009, in which he described the assault that allegedly occurred in January 2009, and sought protection from DOCCS administration from harassment he had received since that incident. Dkt. No. 81-5. At his deposition, plaintiff agreed that this letter was "thoughtful, intelligent, and reasonable." Dkt. No. 81-3 at 71-73. Plaintiff also wrote a letter, dated March 29, 2009, to the DOCCS

13

Central Office seeking protection because "[his] life is in danger by the Administration of Clinton Correctional Facility." Dkt. No. 81-10. The letter recounts various incidents of alleged harassment against him by corrections staff at Clinton that occurred in February and March 2009. *Id.* At his deposition, plaintiff agreed that the letter was "thoughtful, intelligent and reasoned[.]" Dkt. No. 81-3 at 84. While it may have been painful for plaintiff to write these letters, *id.* at 107, as well as the letter he sent to the Clinton superintendent, Dkt. No. 81-7, their content reflects that plaintiff possessed the mental capacity to process the relevant events and take measures to protect his legal rights as early as one month after the alleged assault.

I note, moreover, that plaintiff has adduced no evidence to explain how his mental state at the time of the writing of any of those letters permitted him to seek protection from DOCCS administration regarding the assault and alleged harassment that followed, but not to file his complaint in this matter until after the applicable statute of limitations had expired. *See McEachin*, 2007 WL 952065, at *4 ("If a plaintiff has a lucid interval of significant duration, preceded and followed by a period of insanity, the toll is lost and is not resurrected when a plaintiff relapses into insanity."). Accordingly, I find that plaintiff is not entitled to the benefit of

the tolling provided for in section 208, and recommend that his complaint be dismissed as time barred. *See Wenzel v. Nassau Cnty. Police Dep't*, 914 F. Supp. 902, 906 (E.D.N.Y. 1996) (finding that section 208 does not apply where the plaintiff, *inter alia*, "applied for social security benefits with the advice of counsel and filed two applications for pistol permits in which she signed sworn statements stating that she did not suffer from mental illness"); *McEachin*, 2007 WL 952065, at *4 (finding that the plaintiff does not satisfy section 208 for tolling purposes where he alleged he "hears voices, is depressed, has eating and sleeping disorders, has strained relationships and has attempted suicide four times"); *Cerami*, 624 N.E.2d at 682 (denying the plaintiff the benefit of equitable tolling where the "record evidence reveal[ed] that claimant applied for and obtained employment, consulted with numerous attorneys and filed discrimination complaints with the Human Rights Commission in an effort to regain his former position during the pertinent period").

C.    Merits of Plaintiff's Failure to Protect Claims[9]

Defendants also seek dismissal of plaintiff's complaint based on their contention that the record evidence does not support a conclusion that any

---

[9]    Notwithstanding my recommendation to dismiss plaintiff's complaint based on the expiration of the applicable statute of limitations, out of an abundance of caution, I have addressed the merits of plaintiff's claims. *See Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) ("[D]istrict courts should be especially hesitant to dismiss for procedural deficiencies where, as here, the failure is by a pro se litigant.").

of them were aware of any risk of harm to plaintiff before he was assaulted in January 2009. Dkt. No. 81-29 at 14-18.

Undeniably, prison officials have a duty to intervene and prevent cruel and unusual punishment, prohibited by the Eighth Amendment, from occurring or continuing. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Hayes v. N.Y. City Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996); *see also Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985) ("The failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents has been considered cruel and unusual punishment."). A plaintiff asserting a failure to protect claim must prove that the defendant actually knew of and disregarded an excessive risk of harm to his health and safety. *Hayes*, 84 F.3d at 620. This "reckless disregard" to a plaintiff's health and safety can be proven by evidence establishing "a pervasive risk of harm to inmates . . . and a failure by prison officials to reasonably respond to that risk." *Knowles v. N.Y. City Dep't of Corrs.*, 904 F. Supp. 217, 222 (S.D.N.Y. 1995) (quotation marks omitted). Stated differently, to establish liability on the part of a defendant under this theory, "the plaintiff must adduce evidence establishing that the officer had (1) a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's

constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene." *Henry v. Dinelle*, No. 10-CV-0456, 2011 WL 5975027, at *4 (N.D.N.Y. Nov. 29, 2011) (Suddaby, J.) (citing *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008)); *see also Farmer*, 511 U.S. at 842 ("[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."); *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (finding no realistic opportunity to intervene where "three blows were struck in . . . rapid succession").

Here, plaintiff has failed to adduce sufficient evidence from which a reasonable factfinder could conclude that any of the defendants knew he was in danger of being assaulted by fellow inmates prior to January 12, 2009. While plaintiff contends that defendants should have known that, as an inmate receiving mental health treatment, he experienced "an excessive risk of attack by other inmates," Dkt. No. 13 at 3, there is no evidence to support either the allegation that plaintiff was at a greater risk of harm than other inmates, or that the defendants were aware of that heightened risk.[10] In his opposition to defendants' pending motion, plaintiff

---

[10] It is worth noting in this respect that, at the time of the assault, plaintiff was designated as an "OMH level 4 inmate," a designation that does not require specialized protection from other inmates. Dkt. No 81-24 at 3; Dkt. No. 84 at 10.

identified the two inmates that allegedly assaulted him on January 12, 2009, stating that he knew it was them because he saw them the night before "sitting on the bed of 15 cube whispering to each other." Dkt. No. 84-1 at 2. This information, however, was only revealed after the assault, and plaintiff does not contend that he made any of defendants aware of the other inmates' behavior prior to the assault. *Id.* In addition, plaintiff argues that defendants should have been on notice of his need for protection based on a letter he wrote in 2006 to the mental health department at the Auburn Correctional Facility, where he was then housed, and a number of prior grievances filed by him. Dkt. No. 84 at 11, 14-15; Dkt. No. 84-1 at 16-19. The 2006 letter, however, raises minor, unsubstantiated allegations against officers from a different correctional facility, and who are not defendants in this case. Dkt. No. 84-1 at 16-19. No reasonable factfinder could conclude, based on this letter, that defendants had knowledge of a sexual assault that would occur at a different facility nearly three years after the letter was written. Similarly, the grievances referenced by plaintiff span from 2003 to 2007, and do not involve any of the defendants in this case nor the facility where the incident occurred. Dkt. No. 84-1 at 1-12. The grievances are simply not specific enough to attribute actual knowledge of an impending sexual

assault to any of the defendants in this case. Accordingly, I recommend dismissal of plaintiff's complaint on this basis, as well.[11] *See*, *e.g.*, *Hines v. Lacy*, 189 F.3d 460, No. 98-2961, 1999 WL 642915 at *3 (2d Cir. Aug. 20, 1999) (unpublished) (concluding that the plaintiff's "sketchy description of a verbal confrontation" did not sufficiently alert officers to risk of harm); *Dennis v. Westchester Cnty. Jail Corr. Dep't*, 485 F. App'x 478, 481 (2d Cir. 2012) ("[The plaintiff] testified that while [the defendants] were within hearing-distance, one of the soon-to-be assailants said to another (referring to [the plaintiff]), 'there go that faggot right there. Open the gate for that dude, open the gate for him.' This statement was insufficient to put [the defendants] on notice of a substantial risk of serious harm."); *Desulma v. City of N.Y.*, No. 98-CV-2078, 2001 WL 798002, at *6-7 (S.D.N.Y. July 6, 2001) (concluding that there was no genuine dispute of material fact regarding whether the plaintiff was at risk for substantial harm by fellow inmates, even where it was possible the plaintiff and the inmates had a history of altercations and the defendants learned that the inmates

---

[11]      Plaintiff does not allege, and there is no record evidence, that defendants learned of the assault at a time that would allow any of them to intervene and protect plaintiff while it was on-going. Indeed, plaintiff admits that, although he did yell for help during the assault, his requests for intervention were not very loud because he was being choked by one of his assailants. Dkt. No. 81-3 at 44-45. In any event, even assuming plaintiff's cries for help were loud enough for someone to hear, there is no evidence that the five named defendants in this action were in a position to hear plaintiff's pleas or intervene in time to halt the assault.

threated plaintiff prior to their assault on him).

IV.    SUMMARY AND RECOMMENDATION

Plaintiff's complaint in this action is subject to dismissal because it was filed beyond the expiration of the application statute of limitations and the record evidence does not support plaintiff's claim that he suffered a mental impairment that would justify tolling the statute of limitations. In any event, there is no record evidence from which a reasonable factfinder could conclude that the defendants learned of, and failed to protect plaintiff from, the assault by fellow inmates on January 12, 2009, prior to the incident. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 81) be GRANTED, and plaintiff's amended complaint (Dkt. No. 13) be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:      December 2, 2015
            Syracuse, New York

_____
David E. Peebles
U.S. Magistrate Judge

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Stanley W. McPHERSON, Petitioner,
v.
J. BURGE and H.D. Graham, Respondents.
No. 9:06-CV-1076 (GTS/VEB).

May 5, 2009.
West KeySummary**Habeas Corpus 197** ☞ **603.4**

197 Habeas Corpus

    197III Jurisdiction, Proceedings, and Relief
      197III(A) In General
        197k603 Limitations, Laches or Delay
        197k603.4 k. Bar of limitations in general.
Most Cited Cases
    (Formerly 197k603)

    A defendant's claim for habeas relief, concerning the prison's withholding of good time credits for failure to participate in drug abuse treatment, was barred by the statute of limitations. The defendant filed the claim more than one year after learning of the administrative decision to revoke his good time credits. There were no extraordinary circumstances that prevented the defendant from filing the claim in a timely manner. 28 U.S.C. § 2224(d)(1)(D).

Stanley W. McPherson, Auburn, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Frederick H. Wen, Esq., Assistant Attorney General, of Counsel, New York, NY, for Respondent.

### DECISION and ORDER

Hon. GLENN T. SUDDABY, District Judge.
    **\*1** Stanley W. McPherson ("Petitioner") filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, on August 31, 2006. (Dkt. No. 1.) By

Report-Recommendation dated January 27, 2009, the Honorable Victor E. Bianchini, United States Magistrate Judge, recommended that the Petition be denied and dismissed, and that a certificate of appealability not issue. (Dkt. No. 15.) Petitioner timely filed his Objections to the Report-Recommendation on February 4, 2009. (Dkt. No. 16.) For the reasons discussed below, Magistrate Judge Bianchini's Report-Recommendation is accepted and adopted in its entirety, and Petitioner's petition is denied and dismissed in its entirety.

## I. STANDARD OF REVIEW

    When specific objections are made to a magistrate judge's report-recommendation, the Court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C).[FN1] When only general objections are made to a magistrate judge's report-recommendation (or the objecting party merely repeats the allegations of his pleading), the Court reviews for clear error or manifest injustice. *See Brown v. Peters,* 95-CV-1641, 1997 WL 599355, at \*2-3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999).[FN2] Similarly, when a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error or manifest injustice. *See Batista v. Walker,* 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition [citations omitted]. After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

        FN1. On *de novo* review, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters, 894 F.2d 36, 40, n. 3 (2d Cir.1990)* (district court did not abuse discretion in denying plaintiff's request to present additional testimony where he "offered no justification for not offering the testimony at the hearing before the magistrate").

FN2. *See also Vargas v. Keane,* 93-CV-7852, 1994 WL 693885, at *1 (S.D.N.Y. Dec.12, 1994)* (Mukasey, J.) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by petitioner] ... is a general plea that the Report not be adopted ... [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996).

## II. BACKGROUND

For the sake of brevity, the Court will not repeat the factual background of Petitioner's 1991 conviction for Second Degree Attempted Murder and Second Degree Criminal Possession of a Weapon because Petitioner does not contest his judgment of conviction. (Dkt. No. 15, at 1.) Likewise, the Court will not repeat the factual background surrounding Petitioner's contention that the Auburn Correctional facility improperly withheld six years and eight months of good time credits on or about June 23, 2003, as a result of Petitioner's refusal to participate in a drug abuse treatment program, but will simply refer the parties to the relevant portions of Magistrate Judge Bianchini's Report-Recommendation, which accurately recite that factual background. (Dkt. No. 15, at 1-4.)

In his Petition, Petitioner asserts seven claims in support of his request for habeas relief.FN3 In his Report-Recommendation, Magistrate Judge Bianchini recommends that the Court deny each of these claims as not timely under the one-year limitations period, established by 28 U.S.C. § 2224(d)(1)(D). (*Id.* at 5-6.) In his Objections to Magistrate Judge Bianchini's Report-Recommendation, Petitioner simply states that he objects to the Report-Recommendation. (Dkt. No. 16.)

FN3. These claims are discussed in Magistrate Judge Bianchini's Report-Recommendation. (Dkt. No. 15, at 4.)

**\*2** Because Petitioner has not made specific objections to the recommendations in Magistrate Judge Bianchini's Report-Recommendation, the Court need only review the Report-Recommendation for clear error. *See, supra,* Part I of this Decision and Order. After carefully reviewing all of the papers in this action, including Magistrate Judge Bianchini's Report-Recommendation, the Court agrees with each of the recommendations made by Magistrate Judge Bianchini, and rejects Plaintiff's general objection. (Dkt. No. 15; Dkt. No. 16.) FN4 Magistrate Judge Bianchini employed the proper legal standards, accurately recited the facts, and correctly applied the law to those facts. (Dkt. No. 15, at 5-12.) As a result, the Court accepts and adopts Magistrate Judge Bianchini's Report-Recommendation in its entirety for the reasons stated therein.

FN4. The Court notes that Magistrate Judge Bianchini's Report-Recommendation would also survive *de novo* review.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Bianchini's Report-Recommendation (Dkt. No. 15) is *ACCEPTED* and *ADOPTED* in its entirety; and it is further

**ORDERED** that Petitioner's petition (Dkt. No. 1) is *DENIED* and *DISMISSED* in its entirety; and it is further

**ORDERED** that a Certificate of Appealability shall not issue; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment accordingly and close the file.

## REPORT AND RECOMMENDATION

VICTOR E. BIANCHINI, United States Magistrate Judge.
### I. INTRODUCTION
Petitioner Stanley W. McPherson, acting *pro se,*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is an inmate at the Auburn Correctional Facility. In 1991, he was convicted in a New York State court of two counts of Second Degree Attempted Murder, and one count of Second Degree Criminal Possession of a Weapon. Petitioner does not contest his judgment of conviction, but challenges a decision by the Auburn Correctional Facility to withhold six years and eight months of good time credits as a result of Petitioner's refusal to participate in a drug abuse treatment program.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 13).

## II. BACKGROUND

### A. Facts[FN1]

> FN1. In the interest of judicial economy and because Petitioner does not contest his underlying conviction in this case, this Court will not discuss, in depth, the facts of Petitioner's underlying conviction, trial, or appeals. Rather, this Court will discuss Petitioner's appeals that are relevant to his current habeas petition.

On April 22, 1990, Petitioner approached two women in the Bronx and asked them if they knew where he could buy some "smoke." When they were unable to direct him, he left and came back with a gun and shot and injured the two women as they tried to run away from him. (Docket No. 9 at Exhibits B & H). On December 6, 1991, Petitioner was convicted of two counts of attempted murder in the second degree, and criminal possession of a weapon in the second degree. He was sentenced to concurrent terms of ten (10) to twenty (20) years on each of the two attempted murder counts, and three (3) to six (6) years on the weapon possession count. *See People v. McPherson,* 198 A.D.2d 119, 603 N.Y.S.2d 828 (1st Dep't 1993).

**\*3** During Petitioner's prison intake interview, he admitted using marijuana regularly from 1981 through 1986 and stated that he had recently smoked it on a daily basis. A drug abuse program was recommended for Petitioner, however, he refused to participate. On June 3, 2003, Petitioner appeared at a hearing of the Auburn Correctional Facility Time Allowance Committee ("TAC"). Based on Petitioner's refusal to participate in the drug program, the TAC recommended that all of Petitioner's good time credits, totaling six years and eight months, be withheld from his sentence. (Docket No. 9 at Exhibits A at 3 & B). The TAC advised Petitioner that he could request a reappearance if he completed the drug abuse program. (*Id.* at Exhibit B). Respondent Burge confirmed the TAC's recommendation on June 3, 2003. Petitioner administratively appealed that decision, which was affirmed on June 23, 2003. (*Id.* at Exhibit A at 5 & B).

### B. Article 78 Proceedings

On November 13, 2003, Petitioner, proceeding *pro se,* filed a petition pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"). Petitioner asserted that the withholding of his good time credits violated his Fourteenth Amendment rights. (Docket No. 9, Exhibit A at 2-11). Petitioner argued that there was no evidence of positive drug urinalysis in his record while he was incarcerated. (*Id.* at 3). Therefore, Petitioner argued, in light of the fact that he did not use drugs while incarcerated, he did not qualify for the program and should not have been required to participate. (*Id.*).

The Honorable Joseph C. Teresi, Justice of the New York State Supreme Court, dismissed Petitioner's Article 78 petition on April 28, 2004. On May 11, 2004, Petitioner appealed to the Appellate Division, Third Department, which affirmed the Supreme Court's dismissal of his petition. *McPherson v. Goord,* 17 A.D.3d 750, 793 N.Y.S.2d 230 (3d Dep't 2005).

The Appellate Division stated that:

Although petitioner contends that the recommendation that he participate in a substance abuse program was in error given the absence of any drug abuse in the underlying crimes or in his institutional record, the record establishes that just prior to committing the instant offense, petitioner asked the victims of the crime where he could buy some 'smoke.' Furthermore, the presentence investigation report indicates that petitioner admitted to the use of marihuana.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

*Id.* at 751, 793 N.Y.S.2d 230. The New York Court of Appeals denied Petitioner leave to appeal the Appellate Division's decision on September 15, 2005. *McPherson v. Goord, 5,* N.Y.3d 709 (2005).

**C. Federal Habeas Corpus Proceedings**

Petitioner, proceeding *pro se,* commenced this action on August 31, 2006, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1). In his Petition, Petitioner asserts that: (1) withholding his good time credits for his refusal to attend the drug abuse program when the program did not apply to him violated his constitutional rights; (2) "[a] Due Process violation in procedure and determination. A Liberty Interest as of mandatory conditional release."; (3) his Fourteenth Amendment rights were violated when he was not conditionally released from his indeterminate sentence after completing 2/3 of his sentence; (4) his rights under the Ex Post Facto Clause were violated by Respondents adding the drug abuse program as a requirement in order for Petitioner to obtain his good time credits after he was incarcerated and that Respondents failed to transcribe the hearing proceedings; (5) the Appellate Division violated his equal protection rights in reviewing Petitioner's pre-sentence report *in camera* without Petitioner and without giving Petitioner an opportunity to review the report; (6) the Time Allowance Committee violated Petitioner rights by failing to record or transcribe the hearing; and (7) his Fifth Amendment rights were violated by Respondents' failure to follow proper procedure and by "failing to following [sic] the statute § 7804 of CPLR." (Docket No. 1).

**\*4** Respondent filed a Response and memorandum of law in opposition on December 29, 2006. (Docket No. 6). Thereafter, on January 3, 2007, Respondent filed an Amended Answer and Memorandum of Law. (Docket No. 8). Petitioner filed his Traverse on January 17, 2007. (Docket No. 17). This case was referred to the undersigned by Order of the Honorable Norman A. Mordue, Chief United States District Judge, on October 27, 2008. (Docket No. 13).

**III. DISCUSSION**

**A. Timeliness**

A state prisoner challenging the loss of good time credits must bring an action for habeas corpus relief under 28 U.S.C. § 2254. *Jenkins v. Duncan,* No. 02-CV-0673, 2003 WL 22139796, at \*3 (N.D .N.Y. Sep. 16, 2003); *see also Cook v. New York State Div. of Parole,* 321 F.3d 274, 278-79 (2d Cir.2003) (holding that state prisoner "must bring a challenge to the execution of his or her sentence ... under § 2254").

Petitioner challenges the execution of his sentence, namely, the TAC's decision to revoke his good time credits. As such, the Petition was properly brought pursuant to § 2254. However, because Petitioner is a "person in custody pursuant to the judgment of a state court," he was required to file his petition for habeas corpus relief in accordance with the applicable statute of limitations set forth in 28 U.S.C. § 2244(d)(1). *See Cook,* 321 F.3d at 280 (concluding that limitations period of § 2244 applies to petitions under § 2254).

Section § 2244(d)(1) provides, in pertinent part, as follows:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

In the present case, Petitioner is not challenging the judgment of conviction, there was no state action that impeded Petitioner from seeking habeas relief, and there is no issue regarding retroactive application of a constitutional right recognized by the Supreme Court. As such, the one-year limitations period began running, pursuant to § 2244(d)(1)(D), on the "date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

**\*5** Thus, this Court must determine the date on which the factual predicate of Petitioner's claims could have been discovered with due diligence. The Second Circuit faced an analogous situation in *Cook.* The petitioner in *Cook* was challenging the revocation of his parole. The Second Circuit concluded that the factual predicate for the petitioner's claim reasonably would have been discovered when he "was notified that the administrative decision to revoke his parole had become final." *Cook,* 321 F.3d at 280.

Petitioner challenges the revocation of his good time credits, arguing that the administrative decision in that regard violated his federal constitutional rights. Thus, in accordance with the Second Circuit's reasoning in *Cook,* this Court finds the "factual predicate" of Petitioner's claims was readily identifiable on the date the administrative decision to revoke his good time credits became final.

This raises the question of when Petitioner was notified that the revocation of good time credits was "final." The TAC recommended on June 3, 2003, that Petitioner's good time credits be revoke. That decision was adopted by the superintendent of the correctional facility on that same date. The superintendent's decision was upheld on administrative appeal on June 23, 2003. It is not clear from the record when Petitioner was notified of this decision. However, there is no allegation of undue delay or any reason to believe that Petitioner was not notified at or about the time of the decision.

On September 17, 2003, the chair of the TAC responded to a "recent memo" from Petitioner requesting

reconsideration of the decision. As such, the record clearly indicates that Petitioner was aware of the administrative decision underlying his claims prior to September 17, 2003 (as evidenced by the fact that he sent a memo to the TAC requesting a reconsideration).

Because the actual date of notice of the Superintendent's decision upholding the revocation of good time credits is uncertain, out of an abundance of caution, this Court will use September 16, 2003, as the latest possible date upon which Petitioner could have been notified that the TAC's recommendation had been approved by the facility's superintendent and upheld on administrative review.[FN2] As such, Petitioner's deadline to commence this action would have expired on September 16, 2004, absent statutory or equitable tolling

> FN2. Respondent notes that October 14, 2003, might also be considered as the date on which the withholding of good time credits became "final." On that date, a second reconsideration request by Petitioner was denied. This Court finds that September 16th is the more appropriate date, as that was the last possible date on which Petitioner would have been notified that the TAC's recommendation had been adopted by the superintendent and affirmed on administrative appeal. At that point, Petitioner was clearly aware of the factual predicate of the claims that he raises in this action. In any event, even if October 14th was used as the starting date for a statute of limitations calculation, the instant Petition is still untimely.

**B. Statutory Tolling**

The one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1) is modified by § 2244(d)(2), which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

Under this subsection, the word "pending" designates the "end point" of the tolling period, *Fernandez v. Artuz,* 402 F.3d 111, 116 (2d Cir.2005), and "an application for state review is 'pending' until it has achieved final review

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

through the state's post-conviction procedures." *Foster v. Phillips,* No. 03 Civ. 3629, 2005 WL 2978686, at *4 (S.D.N.Y. Nov. 7, 2005) (citing *Carey v. Saffold,* 536 U.S. 214, 220, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002)); *accord, e.g., King v. Cunningham,* 442 F.Supp.2d 171, 180 n. 15 (S.D.N.Y.2006).

**\*6** In addition, the Second Circuit has held that the "proper calculation of Section 2244(d)(2)'s tolling provision *excludes* time during which properly filed state relief applications are pending but does not *reset* the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000) (emphases added); *accord Bethea v. Girdich,* 293 F.3d 577, 578 (2d Cir.2002).

In this case, the statute of limitations is statutorily tolled from November 13, 2003, when Petitioner filed his Article 78 proceeding,[FN3] until September 15, 2005, when the Court of Appeals of New York denied his application for leave to appeal. Thus, on September 15, 2005, Petitioner's Article 78 had completed the final stage of review and was no longer considered "pending" for tolling purposes.

> FN3. The Article 78 Petition is stamped as received by the Albany County Clerk on April 28, 2004. The Article 78 Petition was dated November 13, 2003. It is not clear why there was such a substantial gap between the date of filing and the date contained on the Article 78 Petition. Again, giving Petitioner every benefit of the doubt, this Court will consider the Article 78 Petition has having been filed on November 13, 2003.

Fifty-eight (58) days passed between September 16, 2003, the latest date on which Petitioner could have been "notified" of the decision to withhold his good time credits, and November 13, 2003, when he filed his Article 78 proceeding. Three hundred fifty (350) days elapsed between September 15, 2005, when the Court of Appeals denied Petitioner's application for leave to appeal, and August 31, 2006, when Petitioner filed this action for habeas relief.

With regard to this August 31, 2006 date, it should be noted this Court has given Petitioner the benefit of the "prisoner mailbox rule." The Petition was not actually filed by the Clerk of this Court until September 7, 2006. Per the "mailbox rule," a motion or pleading filed by a *pro se,* incarcerated petitioner is deemed filed the day that he or she turned the pleading over to prison officials for mailing. *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (holding that a *pro se* prisoner's notice of appeal is deemed filed on the date that the prisoner "deliver[s] it to the prison authorities for forwarding to the court clerk," rather than when it is received by the court clerk).

It is not clear when Petitioner delivered the Petition to prison officials. However, courts in this Circuit have generally concluded that "[a]bsent evidence to the contrary, the Court assumes that [the prisoner] gave his petition to prison officials for mailing on the date he signed it." *Torres v. Irvin,* 33 F. Supp .2d 257, 270 (S.D.N.Y.1998) (citing *Hunter v. Kuhlman,* 97 Civ. 4692, 1998 WL 182441, at *1 n. 2 (S.D.N.Y. Apr.17, 1998) (deeming petition filed on date on which petitioner signed it); *Hughes v. Irvin,* 967 F.Supp. 775, 778 (E.D.N.Y.1997); *Jones v. Artuz,* No. CV 97-2394, 1997 WL 876735, at *1 (E.D.N.Y. Sept. 13, 1997)); *accord Johnson v. Coombe,* 156 F.Supp.2d 273, 277 (S.D.N.Y.2001). In accordance with this practice, this Court deems the Petition filed on August 31, 2006, the date it was signed by Petitioner.

Based on the foregoing calculations, this Court finds that four hundred and eight (408) days of untolled time passed between the latest possible date on which Petitioner was aware of the factual predicate underlying his claim (September 16, 2003)[FN4] and the date that he filed the instant case (August 31, 2006). The Petition for habeas relief is therefore untimely and barred by the one-year statute of limitations set forth in § 2244.

> FN4. The Petition is untimely even if October 14, 2003, the date on which Petitioner's second reconsideration request was denied, is used as the date on which Petitioner was aware of the factual predicate underlying his claims. Using that date, three-hundred eighty (380) days of untolled time

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

elapsed prior to the filing of this case.

**C. Equitable Tolling**

**\*7** The one-year period set forth in AEDPA for the filing of federal habeas petitions is a statute of limitations, not a jurisdictional period. *Smith,* 208 F.3d at 17. However, it is only in " 'rare and exceptional circumstances' " that AEDPA's limitations period may be subject to equitable tolling. *Doe v. Menefee,* 391 F.3d 147, 159 (2d Cir.2004) (quoting *Smith,* 208 F.3d at 17)).

Consequently, the period may be equitably tolled only if a petitioner is able to show that extraordinary circumstances prevented him from filing his petition earlier and that he acted with reasonable diligence throughout the period sought to be tolled. *Id.* "Extraordinary circumstances" are events which were "beyond [petitioner's] control" and which prevented successful filing during the one-year time period. *Smaldone v. Senkowski,* 273 F.3d 133 (2d Cir.2001).

Equitable tolling also "requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson,* 224 F.3d 129, 134 (2d Cir.2000). Thus, the petitioner must show that extraordinary circumstances "prevented" him from filing on time. *Id.* at 133-34.

There is no indication in the record of any extraordinary circumstances that operated to prevent Petitioner from timely filing his application for habeas relief. In particular, there is no evidence that the nearly one year delay between the conclusion of the Article 78 proceeding and the filing of this case was caused by any events beyond Petitioner's control. Petitioner's *pro se* status does not, in and of itself, entitle him to equitable tolling. *Id.* (citing *Turner v. Johnson,* 177 F.3d 390, 392 (5th Cir.1999) ("[N]either a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling.")); *see also Francis v. Miller,* 198 F.Supp.2d 232, 235

(E.D.N.Y.2002) (stating that petitioner's ignorance of the law and legal procedures are not extraordinary circumstances); *Armand v. Strack,* No. 98 Civ. 6650, 1999 WL 167720, at \*5 (E.D.N.Y.Feb.19, 1999) (noting that lack of access to law clerks, illiteracy, lack of English fluency and ignorance of the law have all been considered and rejected by courts as insufficient to demonstrate exceptional circumstances); *Fennell v. Artuz,* 14 F.Supp.2d 374, 377 (S.D.N.Y.1998) (holding that equitable tolling based on excuses common among prisoners, such as lack of education and lack of familiarity with legal research, would undermine AEDPA's statute of limitations.

Accordingly, this Court finds that equitable tolling is not warranted in this case and therefore recommends that the Petition be dismissed as untimely filed and barred by the applicable statute of limitations.

### IV. CONCLUSION

**\*8** For the reasons stated above, the Court recommends Stanley McPherson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that the Petition be dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. *See* 28 U.S.C. § 2253(c)(2) (1996).

### V. ORDERS

Pursuant to 28 USC § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

**SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *F.D.I.C. v. Hillcrest Associates,* 66 F.3d 566 (2d. Cir.1995); *Wesolak v. Canadair Ltd. .,* 838 F.2d 55 (2d Cir.1988); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not,* presented to the Magistrate Judge in the first instance. *See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

SO ORDERED.

N.D.N.Y.,2009.

McPherson v. Burge
Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

2011 WL 1577236
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Emanuel McADOO, also known
as Emmanuel Smith, Plaintiff,
v.
Mary Ann JAGIELLO, in her
individual capacity, Defendant.

No. 9:10–CV–355.   |   April 26, 2011.

**Attorneys and Law Firms**

Emanuel McAdoo, Brooklyn, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of the State of
New York, Justin C. Levin, Esq., Asst. Attorney General, of
Counsel, Albany, NY, for the Defendant.

### *MEMORANDUM–DECISION and ORDER*

DAVID N. HURD, District Judge.

## I. *INTRODUCTION*

 *1  Plaintiff Emanuel McAdoo ("plaintiff" or "McAdoo"),
a former New York state prison inmate and current parolee
proceeding *pro se* and *in forma pauperis,* commenced
this action on March 26, 2010, pursuant to 42 U.S.C. §
1983. Plaintiff alleges that defendant Mary Ann Jagiello
("defendant" or "Jagiello"), a senior parole officer with
the New York State Division of Parole ("NYDOP"),
violated his due process rights guaranteed by the Fourteenth
Amendment to the United States Constitution. Plaintiff
seeks monetary damages. Defendant has moved to dismiss
plaintiff's complaint in its entirety pursuant to Federal Rule of
Civil Procedure 12(b)(6). Defendant also requests a protective
order, pursuant to Federal Rule of Civil Procedure 26(c),
staying discovery pending the ultimate resolution of this
motion. Plaintiff opposes the motion.

## II. *FACTUAL BACKGROUND*
The following pertinent facts, taken from the complaint, are
accepted as true for purposes of this motion to dismiss.

On September 16, 1999, plaintiff was released from the
custody of the New York State Department of Correctional
Services and placed on parole supervision. Thereafter,
plaintiff's parole supervision was transferred from New York
to Florida pursuant to New York Executive Law section
259–m. On January 25, 2000, while on parole, McAdoo was
arrested on drug charges in Florida. The NYDOP issued a
warrant, lodged as a detainer, against plaintiff on January 18,
2001. On February 8, 2001, plaintiff was found guilty of the
Florida drug charges after a jury trial.

Also in February 2001, plaintiff waived his right to a
preliminary parole revocation hearing in New York. While
incarcerated in Florida at some point in 2001, plaintiff
requested that the NYDOP hold a final revocation hearing in
his absence. Defendant sent plaintiff a letter, dated December
10, 2003, informing McAdoo that his final revocation hearing
could not be held in absentia. This letter further advised:
"[Y]ou must be physically present within New York to have a
Final Hearing. Therefore, no decision can be made regarding
your violation and the remaining time you have on your
sentence, until you are returned to New York." Plaintiff's
sentence was subsequently "extended" by five years. [1]

## III. *DISCUSSION*
Plaintiff asserts that defendant's failure to conduct a final
parole revocation hearing within 90 days of his request
to have such a hearing proceed in his absence constitutes
a deprivation of his due process rights. Defendant argues
that McAdoo's claim is barred by *Heck v. Humphrey,* 512
U.S. 477, 114 S.Ct. 2364 (1994), as well as the statute of
limitations and fails to state a claim upon which relief can
be granted. Jagiello further maintains that she is entitled to
qualified immunity.

### A. *Motion to Dismiss—Legal Standard*
To survive a 12(b)(6) motion to dismiss, the "[f]actual
allegations must be enough to raise a right to relief above the
speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544,
555, 127 S.Ct. 1955, 1965 (2007). Although a complaint need
only contain "a short and plain statement of the claim showing
the pleader is entitled to relief" (Fed.R.Civ.P. 8(a)(2)), more
than mere conclusions are required. Indeed, "[w]hile legal
conclusions can provide the framework of a complaint, they
must be supported by factual allegations." *Ashcroft v. Iqbal,*
—— U.S. ——, 129 S.Ct. 1937, 1950 (2009).

**\*2** Dismissal is appropriate only where plaintiff fails to provide some basis for the allegations that support the elements of his claims. *See Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974 (requiring "only enough facts to state a claim to relief that is plausible on its face"). When considering a motion to dismiss, the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). Additionally, particular deference should be given to a *pro se* litigant's complaint when applying the above standard. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007).

**B.** *Plaintiff's Response to Defendant's Motion to Dismiss*
Defendant argues that plaintiff's response to the motion to dismiss should not be considered as it was filed late and without a proper affidavit of service. Indeed, on October 21, 2010, United States Magistrate Judge Baxter granted plaintiff an extension of time to file his response by November 1, 2010. However, plaintiff's response was not filed until November 15, 2010. *See* Dkt. No. 15.

Rule 7.1(b) (3) of the Local Rules for the Northern District of New York states: "The Court shall not consider any papers required under this Rule that are not timely filed or are otherwise not in compliance with this Rule unless good cause is shown." However, it is well-established that *pro se* plaintiffs are "entitled to certain latitude," especially when facing a dispositive motion. *Jemzura v. Pub. Serv. Comm'n,* 961 F.Supp. 406, 415 (N.D.N.Y.1997) (McAvoy, C.J.); *see also Murray v. Goord,* 668 F.Supp.2d 344, 353 (N.D.N.Y.2009) (Scullin, S.J. & Peebles, M.J.).

The docket sheet indicates that there was difficulty sending documents to McAdoo. Mail was returned as undeliverable in May and September 2010. Dkt. Nos. 5, 12. Further, plaintiff changed addresses three times between April and October 2010. Dkt. Nos. 4, 11, 14. Moreover, although defendant complains about the completeness of the affidavit of service, she clearly received plaintiff's response and was afforded an opportunity to reply to same. Indeed, attached to defendant's reply is a copy of the envelope-postmarked November 12, 2010—in which McAdoo mailed his response to defense counsel. Dkt. No. 16. Given the latitude owed to *pro se* litigants, and in an abundance of caution, plaintiff's response will be considered.

**C.** *Applicability of Heck v. Humphrey*

Defendant argues that McAdoo's claim is barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364 (1994). In *Heck,* the Supreme Court held that a plaintiff cannot use a § 1983 action to expressly or implicitly challenge the validity of a conviction or sentence unless such conviction or sentence had already been reversed, called into doubt by the issuance of a habeas corpus petition, or otherwise invalidated. *Id.* at 486–87, 114 S.Ct. at 2372. A plaintiff seeking to challenge the legality of his conviction or sentence must do so via a habeas petition after exhausting available state remedies. *Id.* at 489, 114 S.Ct. at 2373. However, *Heck* acknowledged that a plaintiff can bring a § 1983 claim to seek damages for a defendant's use of the "wrong procedures, not for reaching the wrong result" so long as such a claim does not call into question the lawfulness of plaintiff's continued confinement. *Id.* at 482–83, 114 S.Ct. at 2370. In other words, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the [§ 1983] complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487, 114 S.Ct. at 2372.

**\*3** Importantly, *Heck* "does not bar a § 1983 action that, at most, increases the *likelihood* that a plaintiff will eventually be able to overturn a still-outstanding conviction, but which does not go so far as to *necessarily* demonstrate the conviction's invalidity." *McKithen v. Brown,* 481 F.3d 89, 102 (2d Cir.2007). The Supreme Court has clarified that "the proper inquiry is whether 'victory for the prisoners [mean] immediate release or a shorter period of incarceration.' " *Id.* (quoting *Wilkinson v. Dotson,* 544 U.S. 74, 80, 125 S.Ct. 1242, 1247 (2005)). That a victory in a § 1983 suit may be helpful in a subsequent challenge to the plaintiff's conviction or confinement is "irrelevant." *Id.*

The principles detailed in *Heck* and its progeny have been applied to parole revocation cases. *See, e.g., Sumter v. Marion,* No. 98 Civ. 2744, 1999 WL 767426, at \*5 (S.D.N.Y. Sept. 28, 1999) (dismissing § 1983 claim because to find in plaintiff's favor would require finding that defendants falsified evidence at the revocation hearing, thus invalidating the result); *Sealey v. Fishkin,* No. 96 CV 6303, 1998 WL 1021470, at \*5 (E.D.N.Y. Dec. 2, 1998) (dismissing § 1983 claim alleging police officer made false statements to parole officials, ultimately leading to parole revocation).

McAdoo alleges that defendant followed improper procedure, not that the ultimate revocation of his parole was wrong.[2]

Indeed, he seeks monetary damages for "emotional injury" as opposed to declarative relief invalidating his revocation or an injunction preventing his continued parole supervision. Moreover, a finding that Jagiello violated McAdoo's due process right to a timely final revocation hearing does not necessarily imply that his subsequent parole revocation was invalid. This is noticeably different from a claim that the revocation hearing itself was tainted by the reliance on false evidence as in *Sumter* or a claim that the revocation was based on false statements made by an arresting police officer as in *Sealey*. A finding in favor of the *Sumter* and *Sealey* plaintiffs obviously invalidates the determination made at their final revocation hearings. McAdoo does not allege that the decision to revoke his parole was based on faulty evidence or inaccurate information relating to his Florida drug charges. His sole claim is that defendant refused to conduct a timely revocation hearing in his absence. A finding in his favor, therefore, would not undermine the validity of his revocation nor necessitate an immediate change to his current sentence.

Accordingly, defendant's assertion that *Heck v. Humphrey* mandates dismissal of McAdoo's § 1983 action is rejected.

### D. *Statute of Limitations for § 1983 Claims*

Jagiello next argues that plaintiff's cause of action is time-barred. The statute of limitations for § 1983 claims is equivalent to the applicable state law statute of limitations for personal injury tort claims. *Wallace v. Kato,* 549 U.S. 384, 387, 127 S.Ct. 1091, 1094 (2007). The statute of limitations period for a § 1983 claim in New York is three years. *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 225 (2d Cir.2004). This period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Covington v. City of New York,* 171 F.3d 117, 121 (2d Cir.1999) (internal quotation marks omitted).

 **\*4** Making all reasonable inferences in plaintiff's favor, it is assumed that he first learned of his alleged injury upon receipt of defendant's letter in December of 2003. The statute of limitations for any associated § 1983 claim thus expired in December of 2006. As McAdoo did not file this action until March of 2010, it is clearly untimely. In response, plaintiff asserts that the statute of limitations "is not applicable" because he suffered from mental illness —including schizoaffective disorder, bipolar disorder, post-traumatic stress disorder, and drug addiction—since 1986.

The tolling of the statute of limitations for § 1983 claims is governed by state law tolling provisions. *Wallace,* 549 U.S.

at 394, 127 S.Ct. at 1098. New York law tolls the statute of limitations for persons suffering from "insanity at the time the cause of action accrues." N.Y.C.P.L.R. § 208. If the disability of insanity ceases, the party has three years thereafter to file a cause of action. *Id.* This tolling statute is to be "narrowly interpreted." *McCarthy v. Volkswagen of Am.,* 55 N.Y.2d 543, 548 (N.Y.1982). [3] In order to benefit from section 208, plaintiff must establish that he was "unable to protect [his] legal rights because of an over-all inability to function in society." *Id.*

When determining whether a party suffered from insanity within the meaning of this statute, a court is to consider "all surrounding facts and circumstances relevant to the claimant's ability to safeguard his or her legal rights." *Cerami v. City of Rochester Sch. Dist.,* 82 N.Y.2d 809, 812 (N.Y.1993). "Apathy, depression, posttraumatic neurosis, psychological trauma and repression therefrom, or mental illness alone are insufficient to invoke the tolling provisions of § 208; the mental disability must be severe and incapacitating." *McEachin v. City of New York,* No. 03–CV–6421, 2007 WL 952065, at \*4 (E.D.N.Y. Mar. 29, 2007) (internal quotation marks omitted). Nor is an allegation that plaintiff was "mentally ill" when the claim accrued sufficient to trigger section 208. *Murphy v. West,* 533 F.Supp.2d 312, 316 (W.D.N.Y.2008). Moreover, there is no *per se* toll for psychiatric hospitalization" under New York law. *Joseph S. v. Hogan,* 561 F.Supp.2d 280, 315 (E.D.N.Y.2008). Finally, plaintiff must also demonstrate that the disability of insanity continued throughout the relevant statutory period. *Libertelli v. Hoffman–La Roche, Inc.,* 565 F.Supp. 234, 237 (S.D.N.Y.1983).

It cannot be determined whether McAdoo suffered from the disability of insanity within the meaning of section 208 in December 2003 or, if so, how long this condition persisted to prevent him from pursuing his legal rights. McAdoo submitted medical records—dated April 2009—indicating that he was diagnosed with schizoaffective and bipolar disorders in 2006. Dkt. No. 15, Ex. B. These records further document a history of drug addiction and hospitalizations for depression in 2006. *Id.* What these records fail to reveal, however, is how plaintiff's functioning was impacted by these conditions. Moreover, plaintiff maintains that he suffered from mental illness and drug addiction since 1986. It is unknown what part these conditions played in plaintiff's failure to pursue this action in a timely fashion. Nothing in the complaint or plaintiff's memorandum of law indicates what level of functioning he was capable of between the time he

received defendant's letter in December 2003 and when the statute of limitations ended three years later. Nor is it clear when plaintiff's alleged insanity ceased. [4] In the absence of such information, it cannot be determined, as a matter of law, whether plaintiff's condition during the relevant time period met the high standard of "insanity" for purposes of section 208's tolling provision.

**\*5** Courts often conduct evidentiary hearings to determine whether a plaintiff's condition constitutes insanity. *See, e.g., Shonowsky v. City of Norwich,* No. 3:10–CV–745, 2010 WL 4609305, at \*2–3 (N.D .N.Y. Nov. 4, 2010) (McAvoy, S.J.) (reserving decision pending a hearing on whether plaintiff's mental condition warrants tolling under section 208); *Kelly v. Solvay Union Free Sch. Dist.,* 116 A .D.2d 1006, 1006 (N.Y.1986) ("[U]nless the proof of insanity is conclusive, the court should conduct a fact-finding hearing to determine the extent of plaintiff's disability."). Such a hearing may be necessary in this case if not for the fact that plaintiff's claim can, and will, be dismissed on the merits.

Accordingly, the statute of limitations issue need not be decided for purposes of this motion.

### E. *Due Process Claim*

McAdoo's due process claim is simply that defendant refused to hold a final parole revocation hearing in New York within 90 days of his request for such a hearing to occur in his absence. [5]

In order to survive a motion to dismiss a due process claim under § 1983, a plaintiff "must allege the deprivation of a constitutionally protected interest." *Abramson v. Pataki,* 278 F.3d 93, 99 (2d Cir.2002). The Supreme Court has held that parole revocation impacts a protected liberty interest. *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 2601 (1972). Parolees must be provided both a preliminary hearing to determine the existence of probable cause that a violation has occurred and a final revocation hearing— affording the parolee notice, an opportunity to be heard and confront witnesses, and an impartial hearing officer—within "a reasonable time" thereafter. *Id.* at 488, 92 S.Ct. at 2603–04.

New York law dictates that final parole revocation hearings generally must be held within 90 days of the probable cause determination or, as in this case, the date on which the parolee waived his right to a preliminary hearing. N.Y. EXEC. LAW § 259–i(3)(f)(i). However, New York parolees who are supervised in other states—and subsequently incarcerated in such other states on new criminal charges—are not entitled to a final revocation hearing until they return to New York. *Id.* § 259–o(4); *see also People ex rel. Freeman v. Warden of Anna M. Kross Ctr.,* 208 A.D.2d 478, 478 (N.Y.App. Div. 1st Dep't 1994) (interpreting section 259–o(4) "to mean that *all* New York parole violators who [have] been released to other States pursuant to Executive Law § 259–m, and who [are] later incarcerated in such States, [are] not entitled to final parole revocation hearings until within 90 days after their return to New York" (internal quotation marks and alterations omitted)).

Therefore, McAdoo was not entitled to a final revocation hearing while he remained in custody in Florida. *See Noble v. N.Y. Div. of Parole,* 35 A.D.3d 979, 980 (N.Y.App. Div.3d Dep't 2006) (holding that the DOP "is not obligated to provide petitioner with a preliminary or final parole revocation hearing until he completes his sentence in [another state] and that state relinquishes custody of him"). Plaintiff does not allege that defendant failed to conduct a final revocation hearing within 90 days of his return to New York. Indeed, as noted above, plaintiff does not provide any facts concerning his return to New York, how his parole was formally revoked, or when his sentence was "extended."

**\*6** Accordingly, plaintiff's due process claim will be dismissed.

### F. *Qualified Immunity*

Defendant argues that she is entitled to qualified immunity, which generally protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). However, if no constitutional right would have been violated were the allegations established, "there is no necessity for further inquiries concerning qualified immunity." *Los Angeles Cnty. v. Rettele,* 550 U.S. 609, 616, 127 S.Ct. 1989, 1994 (2007) (internal quotation marks omitted).

Accordingly, the issue of qualified immunity need not be addressed because, as discussed above, plaintiff fails to allege a plausible constitutional claim against Jagiello.

### G. *Defendant's Request for a Protective Order*

Finally, defendant requests an order pursuant to Federal Rule of Civil Procedure 26(c) staying discovery pending the outcome of this motion to dismiss. Rule 26(c) authorizes a court to issue an order protecting a party from, *inter alia,* "undue burden or expense." Fed.R.Civ.P. 26(c)(1). Further, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36, 104 S.Ct. 2199, 2209 (1984).

As the complaint will be dismissed in its entirety, good cause exists to protect Jagiello from further undue burden and expense. Accordingly, discovery will be stayed in the event an appeal of this order is taken.

## IV. *CONCLUSION*

Accepting plaintiff's allegations as true and making all reasonable inferences in his favor, he fails to state a plausible claim on which relief can be granted. Defendant's refusal to conduct a final parole revocation hearing in plaintiff's absence within 90 days of his request for such a hearing did not amount to a deprivation of McAdoo's due process rights. Indeed,

McAdoo was not entitled to a final revocation hearing until he returned to New York.

Accordingly, it is

ORDERED that

1. Defendant's motion to dismiss is GRANTED;

2. Plaintiff's complaint is DISMISSED in its entirety; and

3. Defendant's motion for a stay of discovery pending the ultimate outcome of this motion is GRANTED.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2011 WL 1577236

## Footnotes

1    Plaintiff does not explain how his sentence was extended. Also noticeably missing from the complaint are the terms of his Florida sentence, how long he remained incarcerated in Florida, when he returned to New York, when—if ever—a final parole revocation hearing was held, and whether he was reincarcerated in New York.

2    Nor could McAdoo succeed on a claim that his parole revocation was improper. McAdoo admits in his complaint that he was found guilty of the drug charges following a jury trial in Florida. Compl ., Dkt. No. 1, ¶ 6(4). As it is well-established that a parolee's conviction of another crime "is adequate, in and of itself, to support a revocation" of parole, a challenge to the actual revocation of plaintiff's parole would fail. *People ex rel. Maggio v. Casscles,* 28 N.Y.2d 415, 418 (N.Y.1971).

3    The *McCarthy* Court noted that the term "insanity" was intentionally used instead of the phrase "mental illness" to prevent "unwarranted extensions of the time within which to commence an action." *Id.*

4    McAdoo's alleged insanity obviously ended as he was able to file this action in March 2010 as a *pro se* plaintiff.

5    In support of this claim, plaintiff cites *White v. N.Y. Div. of Parole,* 60 N.Y.2d 920 (N.Y.1983). In *White,* the New York Court of Appeals held that Executive Law section 259–i "required" the Division of Parole to proceed with a final revocation hearing in plaintiff's absence within 90 days of his knowing and intelligent waiver of his right to be present at the hearing. *Id.* at 922. Case law at the time of this holding required strict compliance with the 90–day time limit—even if the parole violator was imprisoned in a different state. *See People ex rel. Gonzales v. Dalsheim,* 52 N.Y.2d 9, 14–15 (N.Y.1980) (cited and relied on by the *White* Court). In response to these strict holdings, the legislature amended the Executive Law in 1984 "to bring New York law into congruence with the broader Federal due process requirements." *People ex rel. Brown v. N.Y. Bd. of Parole,* 139 A.D.2d 548, 550 (N.Y.App. Div.2d Dep't 1988); *see also People ex rel. Matthews v. N.Y. Div. of Parole,* 95 N.Y.2d 640, 645 (N.Y.2001) (noting that the law was amended "to facilitate the prosecution of parole violators held in out-of-state facilities"). As explained below, the amendments provided for the tolling of the 90–day requirement until the parole violator returned to New York. *See* N.Y. EXEC. LAW § 259–o(4) (effective November 1, 1984). Therefore, McAdoo's reliance on *White* is misplaced.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

**Distinguished by** Hargroves v. City of New York, E.D.N.Y., March 4, 2010

2007 WL 952065
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Guy McEACHIN, Plaintiff,
v.
CITY OF NEW YORK et al, Defendant.

No. 03-CV-6421 (CBA). | March 29, 2007.

**Attorneys and Law Firms**

Guy McEachin, Stormville, NY, pro se.

Concepcion A. Montoya, Corporation Counsel of the City of New York, Mona Vivian Najib, New York City Law Department, New York, NY, for Defendants.

## MEMORANDUM & ORDER

AMON, United States District Judge.

**\*1** Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff's 42 U.S.C. § 1983 claim that he was a victim of false arrest, malicious prosecution, and a conspiracy [1] on the ground that the statute of limitations for plaintiff's claims expired prior to the filing of his complaint. [2] For the forgoing reasons, defendants' motion is granted and the case is dismissed.

### I. *Facts*

On April 17, 1999, detectives Frank Gramarossa and Ramon Munoz witnessed plaintiff, Guy McEachin, holding and smoking what appeared to be a marijuana cigarette in a fenced-in lot behind buildings in Queens, New York. (Compl. at ¶ IV. 3.) The detectives also claimed that they smelled a marijuana odor in the vicinity. (Tr. [3] 401.) When approached by the detectives, plaintiff discarded the marijuana cigarette and attempted to flee. (Tr. 516.) The detectives apprehended the plaintiff, placed him under arrest, and recovered the discarded remains of the marijuana cigarette. (Tr. 403.) The subsequent search of the plaintiff's person executed incident

to the arrest produced 79 bags of cocaine, a beeper, a razor blade and assorted empty ziplock bags. (Tr. 404.) On May 18, 1999, a grand jury indicted plaintiff in a nine count indictment with two counts of Unlawful Possession of Marijuana (N.Y. PENAL LAW § 221.05), Criminal Possession of Marijuana in the Fifth Degree (N.Y. PENAL LAW § 221.10), two counts of Criminal Possession of a Controlled Substance in the Third Degree (N.Y. PENAL LAW §§ 220.16-1 & -12), two counts of Criminal Possession of a Controlled Substance in the Seventh Degree (N.Y. PENAL LAW § 220.03), Criminally Using Drug Paraphernalia in the Second Degree (N.Y. PENAL LAW § 220.50-2) and Resisting Arrest (N.Y. PENAL LAW § 205.30-1).

Assistant District Attorneys Golia and Chu, defendants in this action, prosecuted plaintiff's resulting criminal trial. At trial, the plaintiff and defendant Gramarossa and his partner, detective Munoz, testified. Plaintiff alleged that defendants Donna Golia and Daniel Chu conspired with defendant Gramarossa by assisting in the preparation of allegedly perjurious testimony. (Compl. at ¶ IV. 3.) On August 30, 2000, plaintiff was acquitted of the marijuana charges, but was convicted of the cocaine-related offenses. [4] (Cert. of Disp. of Indict.) [5]

### II. *Procedure*

On December 17, 2003, plaintiff filed a civil complaint under 42 U.S.C. § 1983 alleging false arrest; malicious prosecution stemming from his April 1999 arrest and subsequent trial; and conspiracy by an officer and two Assistant District Attorneys to present false testimony on the witness stand. Plaintiff argued that his arrest was unlawful for lack of probable cause to arrest him and that the prosecution knowingly relied on false trial testimony to secure his conviction. Plaintiff named as defendants, the City of New York; the New York Police Department ("NYPD"); former NYPD Commissioner, Howard Safir; Queens District Attorney, Richard Brown; Queens Assistant District Attorneys, Donna Golia and Daniel Chu; and NYPD detective, Frank Gramarossa.

**\*2** On January 12, 2004, the Court initially ordered McEachin to show cause why his petition should not be dismissed as untimely. McEachin responded on February 13, 2004 ("2004 Declaration"), arguing that he was entitled to equitable tolling because of court visits and his mental health. The Court never ruled on the issue of timeliness at that stage in the litigation.

Subsequently, defendants filed a motion to dismiss the complaint on August 13, 2004. Defendants moved to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure on the grounds that (1) plaintiff's cause of action is barred due to the expiration of the statute of limitations on August 30, 2003; (2) probable cause existed to arrest plaintiff and therefore the false arrest claim is void; (3) plaintiff fails to state a claim for malicious prosecution; (4) the District Attorney defendants Brown, Golia and Chu are entitled to absolute immunity; (5) Detective Gramarossa is entitled to qualified immunity; (6) plaintiff fails to state a claim for municipal liability by defendant City; (7) the NYPD is not a suable entity; (8) plaintiff has not sufficiently alleged a conspiracy among the defendants to deprive him of his constitutional rights; (9) defendants Brown and Safir were not personally involved in the alleged deprivation of plaintiff's constitutional rights; and (10) with respect to any alleged state law claims, plaintiff failed to sufficiently state a cause of action against defendants.

On November 8, 2004, plaintiff filed a memorandum of law in opposition to defendants' motion to dismiss ("Plaintiff's Opposition"). In Plaintiff's Opposition, McEachin argues that because he was ordered on January 12, 2004 to show cause why his complaint should not have been dismissed as untimely and he has replied to that order, then his claims cannot be dismissed for lack of timeliness at this stage. [6] Defendants submitted a reply to Plaintiff's Opposition on December 7, 2004, arguing that the 2004 Declaration does not support an equitable tolling defense. [7] Plaintiff submitted a letter dated March 4, 2007 as his surreply ("Surreply"). [8]

### III. *Standard for a Motion to Dismiss*
On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. The District Court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999).

### IV. *Discussion*
The statute of limitations imposes upon the potential plaintiff a duty to seek redress for wrongs done to him in a timely fashion, or else forfeit those claims. McEachin has brought

his claims under 42 U.S.C. § 1983, [9] which does not contain a statute of limitations provision. However, the Supreme Court has mandated that federal courts considering § 1983 claims borrow the relevant state's general or residual statute of limitations for personal injury. *Owens v. Okure,* 488 U.S. 235, 250, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). Accordingly, New York's general statute of limitations for personal injury, which is three years, applies to cases brought pursuant to § 1983. *Curto v. Edmundson,* 392 F.3d 502, 504 (2d Cir.2004) (finding N.Y. C.P.L.R. 214(5), which sets the statute of limitations for personal injury claims, supplies the limitations period for a civil rights claim brought under 42 U.S.C. § 1983 in New York).

**\*3** Federal law governs the determination of the date on which the statute of limitations begins to run for purposes of a § 1983 action. *Owens,* 488 U.S. at 251. A plaintiff in a § 1983 action has three years from the date has knowledge of or should have had knowledge of the injury which is the basis of his claim to file his complaint. *Ormison v. Nelson,* 117 F.3d 69, 71 (2d Cir.1997) *(quoting Singleton v. New York,* 632 F.2d 185, 191 (2d Cir.1980)). In this case, plaintiff's arrest on April 17, 1999 serves as the basis for the claim of false arrest. *Wallace v.* Kato, --- U.S. ----, 127 S.Ct. 1091, 1100, --- L.Ed.2d ---- (2007); *Ormison,* 117 F.3d at 71. The allegedly perjured testimony at trial on October 7, 1999 serves as the basis for the conspiracy claim. Plaintiff's acquittal of the marijuana charges on August 30, 2000, serves as the basis for the malicious prosecution claim. [10] *See Amaker v. Weiner,* 179 F.3d 48, 52 (2d Cir.1999) (where the viability of the plaintiff's claims depends on his conviction being invalidated, the statute of limitations begins to run upon the invalidation ..."); *see also Covington v. City of New York,* 171 F.3d 117 (2d Cir.1999). Applying the three year time bar to these three claims would put the outside limit for commencement of plaintiff's § 1983 action at April 17, 2002 for the false arrest claim, October 7, 2002 for the conspiracy claim, and August 30, 2003 for the malicious prosecution claim. Plaintiff's complaint was dated December 9, 2003, more than twenty months past the expiration of the limitations period for the false arrest claim, almost fourteen months past the expiration of the limitations period for the conspiracy claim, and more than three months past the expiration of the limitations period for the malicious prosecution claim. [11]

In his 2004 Declaration, plaintiff argues that his trips from the correctional facility during the year 2003 (to attend court hearings) and his mental suffering (including depression, strained personal relationships and behavioral disorders)

entitle him to an extension of the statute of limitations period under the doctrine of equitable tolling. In his Surreply, McEachin reiterates these arguments and additionally argues that the Court should ignore the statute of limitations to allow McEachin to protect his constitutional rights. The Court declines to ignore the statute of limitations.

The plaintiff's trips to and from the correction facility for various court hearings in 2003 are not valid reasons for tolling the statute of limitations. Given the fact that the circumstances giving rise to plaintiff's § 1983 claims were known to him or should have been known to him at the latest by August 30, 2000, he had more than two years prior to any trips from the facility in which to prepare and file his claims.

The tolling of the statute of limitations as applied to § 1983 actions is governed by state tolling provisions. *Wallace, --- U.S. at ----,* 127 S.Ct. at 1098-99; *Singleton,* 632 F.2d at 191 (quoting *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980)) (noting that state tolling rules, like state limitations periods, govern federal actions brought under § 1983). In New York, the statute of limitations period may be extended "if a person entitled to commence an action is under a disability because of ... *insanity at the time the cause of action accrues ...*" N.Y. C.P.L.R. 208 (emphasis added).

**\*4** Plaintiff has not demonstrated that he suffered from insanity continuously from the time the cause of action accrued until August 30, 2003, as required to toll the statute of limitations under § 208. *See Graboi v. Kibel,* 432 F.Supp. 572, 579 (S.D.N.Y.1977). If a plaintiff has a lucid interval of significant duration, preceded and followed by a period of insanity, the toll is lost and is not resurrected when a plaintiff relapses into insanity. *Id.* Between April 17, 1999, the date his first claim accrued, and August 30, 2003, the date his last claim expired, plaintiff only claims to have suffered from mental health problems during the periods of October through December of 2000 and again from March 2003 to the present. He makes no allegations of mental suffering between the dates of December 2000 and March 2003 and has therefore failed to establish that his condition was continuous during the limitations period. In fact, McEachin seems to exclusively rely on his mental condition in 2003 in order to toll the statute of limitations. In his 2004 Declaration, McEachin stated that his mental condition "greatly deteriorated" from March 2003 through the present. In the conclusion of the 2004 Declaration, he asserts that "his mental health condition from March of 2003 until the present has played a sufficient role in

his failure to file timely." Again, in his Surreply, McEachin only claims that he "was suffering greatly from mental health issues in 2003." Therefore, McEachin has failed to show that he suffered from insanity continuously from the time his causes of action accrued, as required to toll the statute of limitations pursuant to § 208.

Even if McEachin's symptoms were present continuously from the time his claims accrued, the Court finds that plaintiff has not demonstrated that his professed "mental suffering" constitutes "insanity" under § 208, and therefore his allegations cannot toll the statute of limitations for his § 1983 claims. Under § 208, "Insanity" is defined as the failure of an individual to understand and protect their legal rights due to an overall inability to function in society. *Wenzel v. The Nassau County Police Department,* No. 93-4888, 1995 U.S. Dist. LEXIS 22067, at \*10 (E.D.N.Y., Aug. 5, 1995). Apathy, depression, posttraumatic neurosis, psychological trauma and repression therefrom, or mental illness alone are insufficient to invoke the tolling provisions of § 208; the mental disability must be "severe and incapacitating." *Id.* (*citing Sanders v. Kiley,* No. 91-6320, 1995 U.S. Dist. LEXIS 2130, at \*12-13 (S.D.N.Y. Feb. 23, 1995) (proceeding *pro se* in court and managing affairs while in prison suggests that one understands legal rights and is not "insane")). Depression, strained relationships and behavioral disorders are not uncommon issues facing the prison population as a whole and do not rise to the level of insanity. *See Wenzel,* 1995 U.S. Dist. LEXIS 22067 at \*10; *Sanders v. Rosen,* 159 Misc.2d 563, 605 N.Y.S.2d 805 (N.Y.Sup.Ct.1993).

**\*5** Plaintiff asserts in his 2004 Declaration that he hears voices, is depressed, has eating and sleeping disorders, has strained personal relationships and has attempted suicide four times (on July 25, October 4, October 8 and November 11 in 2003). [12] Although McEachin's symptoms indicate mental suffering, they do not establish that plaintiff was unable to understand or protect his legal rights or to function in society as required by § 208. Indeed, plaintiff has represented himself *pro se* in these proceedings and attended court hearings.

The Court therefore finds that plaintiff's allegations of mental suffering do not satisfy New York's tolling provision regarding insanity. Because there is no basis for equitable tolling, plaintiff's § 1983 claims for false arrest, malicious prosecution and conspiracy to commit perjury are barred by the three-year statute of limitations.

**V.** *Conclusion*

Accordingly, the Court hereby grants defendants' motion to dismiss the complaint pursuant to 12(b)(6). The Clerk of the Court is directed to enter judgment for the defendants and to close the case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 952065

Footnotes

1    On January 12, 2004, the Court construed his conspiracy claim to have been brought pursuant to 42 U.S.C. § 1985. As discussed below, the result is the same if McEachin intended to bring his conspiracy claim pursuant to 42 U.S.C. § 1985.

2    Defendants also assert nine other grounds for dismissal, however, the Court need only examine this one to dispose of the action.

3    References to "Tr." refer to the transcript from McEachin's criminal trial.

4    It is unclear from the record before the Court whether McEachin was tried on the resisting arrest charge.

5    The certificate of disposition of the indictment cited as "Cert. of Disp. of Indict."

6    He also argues: that defendant Gramarossa had no "credible objective reason" to arrest him and therefore had no probable cause to make an arrest; that his acquittal, or favorable termination regarding the marijuana charges, laid the foundation for a malicious prosecution claim; and that a conspiracy existed between some of the defendants to deprive him of his constitutional rights. He also briefly addressed the qualified immunity defense.

7    Defendants also maintain that detective Gramarossa had probable cause for McEachin's arrest, negating the false arrest and malicious prosecution claims, and that McEachin has not adequately pleaded his claim of conspiracy.

8    In a letter dated December 23, 2004, McEachin had sought the ability to file a surreply. The Court denied this request on January 12, 2005. Subsequently, on February 2, 2007, the Court directed plaintiff to file a surreply to address the equitable tolling issue.

9    To the extent that plaintiff intended to bring his conspiracy claim pursuant to 42 U.S.C. § 1985(2), the Court's analysis does not change. As discussed below, the Court finds that McEachin's claim was untimely filed. The statute of limitations period for claims brought pursuant to 42 U.S.C. § 1983 and 1985 is the same. *Paige v. Police Dep't of City of Schenectady,* 264 F.3d 197, 199 n. 2 (2d Cir.2001).

10   Favorable termination of a charge against a potential plaintiff, i.e. acquittal, is a necessary element in a malicious prosecution claim. Therefore, a plaintiff could not have knowledge of the injury serving as the basis for such a claim until he received the favorable verdict.

11   In his Surreply, McEachin states that he became aware "that a constitutional violation manifested itself" in 2003. However, the standard requires the Court to look to the date that the plaintiff "should have had knowledge of the injury." Those dates are listed above.

12   Note that the only date within the limitations period, and therefore relevant to tolling, is July 25, 2003.

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Jonathan HENRY, Plaintiff,
v.
James F. DINELLE, Corrections Officer; Russell E. Duckett, Corrections Officer; Alfred J. Deluca, Corrections Officer; Donald L. Broekema, Sergeant; and Jean Norton, Nurse, Defendants.
No. 9:10–CV–0456 (GTS/DEP).

Nov. 29, 2011.
Sivin & Miller, LLP, Edward Sivin, Esq., of Counsel, New York, NY, for Plaintiff.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, Timothy P. Mulvey, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

***MEMORANDUM–DECISION and ORDER***

Hon. GLENN T. SUDDABY, District Judge.

*1 Currently before the Court, in this prisoner civil rights action filed by Jonathan Henry ("Plaintiff") against the five above-captioned employees of the New York State Department of Corrections and Community Supervision ("Defendants"), is Defendants' motion for partial summary judgment. (Dkt. No. 24.) For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint alleges that, between approximately January 29, 2009, and January 31, 2009, at Ulster Correctional Facility in Napanoch, New York, Defendants violated Plaintiff's following rights in the following manner: (1) Defendants Nurse Jean Norton, Corrections Officer James F. Dinelle, Corrections Officer Russell E. Duckett and Corrections Officer Alfred J. DeLuca violated Plaintiff's rights under the First Amendment by filing retaliatory false misbehavior reports against him, and subsequently providing false testimony against him at administrative disciplinary hearings, which resulted in his spending time in the Special Housing Unit ("SHU"); (2) Defendant Dinelle violated Plaintiff's rights under the Eighth Amendment by assaulting him on two occasions, and Defendants DeLuca and Duckett violated Plaintiff's rights under the Eighth Amendment by assaulting him once; (3) Defendant Sergeant Donald L. Broekema violated Plaintiff's rights under the Eighth Amendment by failing to intervene to prevent one of these assaults from occurring; (4) Defendant Norton violated Plaintiff's rights under the Eighth Amendment by harassing him almost immediately before he was subjected to the above-described assaults; and (5) Defendants Norton, Dinelle, Duckett and DeLuca violated Plaintiff's rights under the Fourteenth Amendment by performing the aforementioned acts, which constituted atypical and significant hardships in relation to the ordinary incidents of prison life. (*See generally* Dkt. No. 1 [Plf.'s Compl.].) Familiarity with the factual allegations supporting these claims in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties. (*Id.*)

### B. Undisputed Material Facts

At all times relevant to Plaintiff's Complaint, Plaintiff was an inmate and Defendants were employees of the New York State Department of Corrections and Community Supervision at Ulster Correctional Facility. On January 30, 2009, Defendant Dinelle took Plaintiff to the medical ward, because Plaintiff was experiencing a foul odor and oozing from a wound on his leg. After Defendant Norton treated Plaintiff, she filed an inmate misbehavior report against Plaintiff based on (1) Plaintiff's harassing behavior toward Defendant Norton and Defendant Dinelle, and (2) Plaintiff's disobedience of a direct order to be quiet. The misbehavior report was signed by Defendant Dinelle as an employee witness.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

At his deposition, Plaintiff testified, while leaving the infirmary, he was punched and kicked by Defendant Dinelle and two unknown prison officials. Plaintiff was then taken to the SHU, where he waited with Defendants Dinelle and Duckett, and up to three more individuals, for a sergeant to arrive. When Defendant Broekema (a sergeant) arrived at the SHU, Plaintiff was taken to a frisk room, where a frisk was conducted. During the frisk, Defendants Dinelle, Duckett and (Plaintiff suspected) DeLuca used force to bring Plaintiff to the ground. Plaintiff testified that, during the use of force, he was simultaneously punched in the nose by two officers while their supervisor watched.

**\*2** After the use of force, Plaintiff stated to Defendants Dinelle, Broekema and Duckette, "I will be contacting my attorney," or "I will be calling a lawyer." [FN1] Plaintiff never used the term "grievance" when addressing Defendants Dinelle, Broekema and Duckette (or Defendant Norton).[FN2] Subsequently, Defendant Duckett filed an inmate misbehavior report against Plaintiff based on his disobedience of frisk procedures and a direct order. Defendant DeLuca signed this report as a witness to the events.

> FN1. (*Compare* Dkt. No. 24, Attach. 9, at ¶ 17 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 27, Attach. 3, at ¶ 17 [Plf.'s Rule 7 .1 Response]; *see also* Dkt. No. 24, Attach. 4, at 100, 102–03 [attaching pages 216, 218 and 219 of Trans. of Plf.'s Depo.]; Dkt. No. 33, at 2–3 [attaching pages 228 and 229 of Trans. of Plf.'s Depo .].)

> FN2. (*Compare* Dkt. No. 24, Attach. 9, at ¶ 17 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 27, Attach. 3, at ¶ 17 [Plf.'s Rule 7 .1 Response]; *see also* Dkt. No. 24, Attach. 4, at 59–60, 100, 102–03 [attaching pages 175, 176, 216, 218 and 219 of Trans. of Plf.'s Depo.]; Dkt. No. 33, at 2–3 [attaching pages 228 and 229 of Trans. of Plf.'s Depo.].)

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, as set forth in the parties' Rule 7.1 Statement and Rule 7.1 Response, is assumed in this Decision and Order, which

(again) is intended primarily for review by the parties. (*Id.*)

**C. Defendants' Motion**

Generally, in support of their motion for partial summary judgment, Defendants argue as follows: (1) Plaintiff's claim that Defendants issued false misbehavior reports should be dismissed because Plaintiff has no constitutional right to be free of false misbehavior reports; (2) Plaintiff's First Amendment retaliation claim should be dismissed because he has failed to adduce admissible record evidence from which a rational factfinder could conclude that he (a) engaged in protected activity, or (b) suffered adverse action as a result of engaging in protected activity; (3) Plaintiff's Fourteenth Amendment substantive due process claim should be dismissed because he has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendants deprived Plaintiff of his liberty rights; (4) Plaintiff's Eighth Amendment excessive-force claim against Defendant Norton should be dismissed because Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that she (a) used force against Plaintiff, or (b) was in a position to prevent the use of force from occurring, yet failed to do so; (5) Plaintiff's Eighth Amendment excessive-force claim against Defendant DeLuca should be dismissed because Plaintiff's identification of Defendant DeLuca is "very tentative"; (6) Plaintiff's Eighth Amendment failure-to-intervene claim against Defendant Broekema should be dismissed because Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Broekema had a realistic opportunity to intervene to prevent or stop the assault, yet failed to do so; and (7) Defendants are protected from liability, as a matter of law, by the doctrine of qualified immunity, under the circumstances. (*See generally* Dkt. No. 24, Attach. 10 [Defs.' Memo. of Law].).[FN3]

> FN3. In their motion, Defendants do not challenge the evidentiary sufficiency of Plaintiff's Eighth Amendment excessive-force claim against Defendants Dinelle or Duckett. (*See generally* Dkt. No. 24, Attach. 10 [Defs.' Memo. of Law].)

In Plaintiff's response to Defendants' motion for partial summary judgment, he argues as follows: (1) his

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

retaliation claims should not be dismissed because there are triable issues of fact as to whether Defendants retaliated against him for stating that he would be contacting an attorney; (2) his failure-to-intervene claim against Defendant Broekema should not be dismissed because there are triable issues of fact as to whether Defendant Broekema failed to prevent excessive force from being used against him; (3) his excessive-force claim against Defendant DeLuca should not be dismissed because there are triable issues of fact as to whether Defendant DeLuca used excessive force against him; and (4) Defendants are not protected from liability, as a matter of law, by the doctrine of qualified immunity, under the circumstances. (*See generally* Dkt. No. 27, Attach. 5 [Plf.'s Response Memo. of Law].) FN4

> FN4. Plaintiff does not oppose Defendants' arguments that (1) Plaintiff's excessive-force claim against Defendant Norton should be dismissed, and (2) Plaintiff's substantive due process claim should be dismissed. (*See generally* Dkt. No. 27, Attach. 5 [Plf.'s Response Memo. of Law].)

**\*3** In their reply, Defendants essentially reiterate their previously advanced arguments. (*See generally* Dkt. No. 29, Attach. 1 [Defs .' Reply Memo. of Law].)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's decision in *Pitts v. Onondaga Cnty. Sheriff's Dep't,* 04–CV–0828, 2009 WL 3165551, at *2–3 (N.D.N.Y. Sept.29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### B. Legal Standards Governing Plaintiff's Claims

### 1. First Amendment Retaliation Claim

Claims of retaliation like those asserted by Plaintiff find their roots in the First Amendment. *See Gill v. Pidlypchak,* 389 F.3d 379, 380–81 (2d Cir.2004). Central to such claims is the notion that, in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of his First Amendment rights. *See Gill,* 389 F.3d at 381–383. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds, Swierkewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

To prevail on a First Amendment claim under 42 U.S.C. § 1983, a plaintiff must prove by the preponderance of the evidence that (1) the speech or conduct at issue was "protected", (2) the defendants took "adverse action" against the plaintiff—namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights, and (3) there was a causal connection between the protected speech and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Gill,* 389 F.3d at 380 (citing *Dawes v. Walker,* 239 F.3d 489, 492 [2d Cir.2001] ). Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

on the proper reasons alone. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).

**\*4** In determining whether an inmate has established a prima facie case of a causal connection between his protected activity and a prison official's adverse action, a number of factors may be considered, including the following: (1) the temporal proximity between the protected activity and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his motivation. *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir.1996); *Baskerville v. Blot,* 224 F.Supp.2d 723, 732 (S.D.N.Y.2002). Even where the inmate has established such a prima facie case, the prison official may be entitled to judgment as a matter of law on the inmate's retaliation claim where the prison official has satisfied his burden of establishing that the adverse action would have been taken on proper grounds alone. *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994); *Jordan v. Garvin,* 01–CV–4393, 2004 WL 302361, at \*6 (S.D.N.Y. Feb.17, 2004).

**2. Eighth Amendment Claims of Excessive–Force and Failure–to–Intervene**

To establish a claim of excessive-force under the Eighth Amendment, a plaintiff must satisfy two components: "one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord,* 554 F.3d 255, 268 (2d Cir.2009). In consideration of the subjective element, a plaintiff must allege facts which, if true, would establish that defendant's actions were wanton " 'in light of the particular circumstances surrounding the challenged conduct.' " *Id.* (quoting *Blyden v. Mancusi,* 186 F.3d 252, 262 [2d Cir.1999] ). The objective component asks whether the punishment was sufficiently harmful to establish a violation "in light of 'contemporary standards of decency.' " *Wright,* 554 F.3d at 268 (quoting *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Generally, officers have a duty to intervene and prevent such cruel and unusual punishment from occurring or continuing. *Curley v. Village of Suffern,* 268 F.3d 65, 72 (2d Cir.2001); *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). "It is well-established that a law enforcement official has an affirmative duty to intervene

on behalf of an individual whose constitutional rights are being violated in his presence by other officers." *Cicio v. Lamora,* 08–CV–0431, 2010 WL 1063875, at \*8 (N.D.N.Y. Feb.24, 2010) (Peebles, M.J.). A corrections officer who does not participate in, but is present when an assault on an inmate occurs may still be liable for any resulting constitutional deprivation. *Id.* at \*8. To establish a claim of failure-to-intervene, the plaintiff must adduce evidence establishing that the officer had (1) a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene. *Jean–Laurent v. Wilkinson,* 540 F.Supp.2d 501, 512 (S.D.N.Y.2008). Generally, officers cannot be held liable for failure to intervene in incidents that happen in a "matter of seconds." *Parker v. Fogg,* 85–CV–177, 1994 WL 49696 at \*8 (N.D.N.Y. Feb.17, 1994) (McCurn, J.).

**3. Fourteenth Amendment Substantive Due Process Claims**

**\*5** The Due Process Clause of the Fourteenth Amendment contains both a substantive component and a procedural component. *Zinernon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The substantive component "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinernon,* 494 U.S. at 125 [internal quotations marks omitted]. The procedural component bars "the deprivation by state action of a constitutionally protected interest in life, liberty, or property ... *without due process of law." Id.* at 125–126 [internal quotations marks and citations omitted; emphasis in original]. One of the differences between the two claims is that a substantive due process violation "is complete when the wrongful action is taken," while a procedural due process violation "is not complete unless and until the State fails to provide due process" (which may occur *after* the wrongful action in question). *Id.*

"Substantive due process protects individuals against government action that is arbitrary, ... conscience-shocking, ... or oppressive in a constitutional sense, ... but not against constitutional action that is incorrect or ill-advised." *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) [internal quotations marks and citations omitted], *aff'g,* 91–CV–1196, Memorandum–Decision and

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

Order (N.D.N.Y. filed Jan. 26, 1993) (DiBianco, M.J.) (granting summary judgment to defendants in inmate's civil rights action).

"An inmate has a liberty interest in remaining free from a confinement or restraint where (1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular confinement or restraint; and (2) the confinement or restraint imposes 'an atypical and significant hardship on the ordinary incidents of prison life.' " *Whitaker v. Super,* 08–CV–0449, 2009 WL 5033939, at *5 (N.D.N.Y. Dec. 14, 2009) (Kahn, J. adopting Report–Recommendation by Lowe, M.J.) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 [1995] ). Regarding the first prong of this test, "[i]t is undisputed ... that New York state law creates a liberty interest in not being confined to the SHU." *Palmer v. Richards,* 364 F.3d 60, 64 n. 2 (2d Cir.2004). When evaluating whether an inmate's confinement in SHU violates his substantive due process rights, the issue, then, is whether his keeplock confinement imposed "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Id.* at 64.

"In the Second Circuit, determining whether a disciplinary confinement constituted an 'atypical and significant hardship' requires examining 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation compared to discretionary confinement.' " *Whitaker,* 2009 WL 5033939, at *5 (quoting *Palmer,* 364 F.3d at 64). "Where a prisoner has served less than 101 days in disciplinary segregation, the confinement constitutes an 'atypical and significant hardship' only if 'the conditions were more severe than the normal SHU conditions.' " *Id.* (quoting *Palmer,* 364 F.3d at 65).[FN5]

FN5. Generally, " '[n]ormal' SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week." *Whitaker,* 2009 WL 5033939, at *5 n. 27 (citing *Ortiz v. McBride,* 380 F.3d 649, 655 [2d Cir.2004] ).

## 4. Qualified Immunity Defenses

**\*6** The qualified immunity defense is available to only those government officials performing discretionary functions, as opposed to ministerial functions. *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991). "Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68–69 (2d Cir.2004), *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007).

In determining the second issue (i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).[FN6] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007).[FN7] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

*v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).[FN5] As the Supreme Court has explained,

> FN6. *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v. City of Syracuse,* 26 F.3d 14, 17–18 (2d Cir.1994); *Calhoun v. New York State Div. of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

> FN7. *See also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' "); *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

> FN8. *See also Malsh v. Corr. Oficer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) [citing cases]; *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

[T]he qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity

should be recognized.

*Malley,* 475 U.S. at 341.[FN9]

> FN9. *See also Hunter v. Bryant,* 502 U.S. 224, 299, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks omitted].

## III. ANALYSIS

### A. Plaintiff's Retaliation Claim Under the First Amendment

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of this claim because Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that he (1) engaged in protected activity, or (2) suffered adverse action as a result of engaging in protected activity. More specifically, Defendants argue that the claim should be dismissed because (1) the statement of an inmate's intent to contact an attorney is not protected conduct, (2) Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Norton knew of Plaintiff's intention to contact an attorney, and (3) Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendants' actions were retaliatory. (Dkt. No. 24, Attach.10.) [FN10]

> FN10. Defendants also argue that Plaintiff's First Amendment claim should be dismissed to the extent that it is based solely on the fact that misbehavior reports against him were *false* (as opposed to being false *and retaliatory* ). The Court agrees that Plaintiff has no general constitutional right to be free from false misbehavior reports. *See Boddie v. Schneider,* 105 F.3d 857, 862 (2d Cir.1997). As a result, to the extent that the Plaintiff's Complaint may be construed as asserting a claim based solely on the issuance of false behavior reports, that claim is dismissed.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

**\*7** After carefully considering the admissible record evidence adduced in this case, and carefully reviewing the relevant case law, the Court has trouble finding that an inmate's one-time making of an oral statement (immediately after the use of force against him) that he would be "contacting [his] attorney," or "calling a lawyer" at some unidentified point in the future constitutes engagement in activity that is protected by the First Amendment—especially where, as here, the inmate did not reference the prison grievance process in his statement.

Representation by a lawyer is certainly not necessary to file an inmate grievance in the New York State Department of Corrections and Community Supervision, nor does such representation necessarily result in the filing of a grievance. Rather, such representation is most typically associated with the filing of a civil rights action in federal court (as is clear from the motions for appointment of counsel typically filed in federal court actions). As a result, the statement in question does not reasonably imply that Plaintiff would be filing a grievance as much as it implies that he was going to consult an attorney as to whether or not to file a civil rights action in federal court.

Here, such a statement is problematic. This is because, generally, the filing of the prisoner civil rights action in federal court in New York State must be preceded by the prisoner's exhaustion of his available administrative remedies (or his acquisition of a valid excuse for failing to exhaust those remedies). Any filing without such prior exhaustion (or acquisition of a valid excuse), under the circumstances, would be so wholly without merit as to be frivolous. Of course, filing a court action that is frivolous is not constitutionally protected activity.[FN11]

FN11. *See Wade-Bey v. Fluery,* 07–CV–117, 2008 WL 2714450 at *6 (W.D.Mich. July 8, 2010) ("Although it is well established that prisoners have a constitutional right of access to the courts ..., the filing of a frivolous lawsuit would not be protected activity.") [citation omitted].

Moreover, to the extent that Plaintiff's statement could be construed as reasonably implying that he was going to consult an attorney as to whether or not to file a grievance, the Court has trouble finding that such a vague statement is constitutionally protected.[FN12] As one district court has stated, "[h]oping to engage in constitutionally protected activity is not itself constitutionally protected activity."[FN13] The Court notes that a contrary rule would enable a prisoner who has committed conduct giving rise to a misbehavior report to create a genuine issue of material fact (and thus reach a jury) on a retaliation claim (alleging adverse action based on the issuance of that misbehavior report) simply by uttering the words, "I'm calling a lawyer," after he commits the conduct in question but before the misbehavior report is issued.

FN12. The Court notes that numerous cases exist for the point of law that even *expressly threatening* to file a *grievance* does not constitutes protected activity. *See, e.g., Bridges v. Gilbert,* 557 F.3d 541, 554–55 (7th Cir.2009) ("[I]t seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance.") [emphasis in original]; *Brown v. Darnold,* 09–CV–0240, 2011 WL 4336724, at *4 (S.D.Ill. Sept.14, 2011) ("Plaintiff cannot establish that his threat to file a grievance against Defendant Darnold is a constitutionally protected activity."); *Koster v. Jelinek,* 10–CV–3003, 2011 WL 3349831, at *3, n. 2 (C.D.Ill. Aug.3, 2011) ("The plaintiff does not seem to be asserting that he had a First Amendment right to threaten the facilitators with lawsuits and grievances, nor does the Court believe that he has such a right."); *Ingram v. SCI Camp Hill,* 08–CV–0023, 2010 WL 4973302, at *15 (M.D.Pa.Dec.1, 2010) ("Stating an intention to file a grievance is not a constitutionally protected activity."), *aff'd,* No. 11–1025, 2011 WL 4907821 (3d Cir. Oct.17, 2011); *Lamon v. Junious,* 09–CV–0484, 2009 WL 3248173, at *3 (E.D.Cal. Oct.8, 2009) ("A mere threat to file suit does not rise to the level of a protected activity...."); *Miller v. Blanchard,* 04–CV–0235, 2004 WL 1354368, at *6 (W.D.Wis. June 14, 2004) ("Plaintiff alleges that

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

defendants retaliated against him after he threatened to file a lawsuit against them. Inmates do not have a First Amendment right to make threats.").

FN13. *McKinnie v. Heisz,* 09–CV–0188, 2009 WL 1455489, at *11 (W.D.Wis. May 7, 2009) ("Hoping to engage in constitutionally protected activity is not itself constitutionally protected activity. At most, petitioner's actions could be construed as a 'threat' to assert his rights but that is not enough.").

In any event, even assuming, for the sake of argument, that Plaintiff's statement was constitutionally protected, the Court finds, based on the current record, that Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that his statement to Defendants Dinelle, Duckett, and Broekema that he would be contacting an attorney was a substantial or motivating factor for the issuance of the misbehavior report by Defendant Norton (which was signed by Defendant Dinelle as a witness), and the misbehavior report by Defendant Duckett (which was signed by Defendant DeLuca as a witness). The Court makes this finding for two alternate reasons.

**\*8** First, with regard to the misbehavior report issued by Defendant Norton, Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that she was aware Plaintiff would be contacting an attorney. In addition, with regard to the report made by Defendant Duckett (which was signed by Defendant DeLuca as a witness), although there is record evidence that Defendant Duckett had knowledge of Plaintiff's statement that he would contact an attorney, Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Duckett had reason to believe, at the time the misbehavior report was issued, Plaintiff would actually follow through with his one-time oral statement, made on the heals of a heated incident.

Second, even assuming that Defendant Duckett or Defendant Norton had reason to believe Plaintiff would contact an attorney, Plaintiff has failed to adduce

admissible record evidence from which a rational factfinder could conclude that Defendant Duckett or Defendant Norton would not have issued the misbehavior report anyway, based on Plaintiff's actions. Indeed, at Plaintiff's disciplinary hearings, evidence was adduced that he in fact committed most of the misconduct alleged in the misbehavior reports, which resulted in the hearing officer finding multiple violations and sentencing Plaintiff to SHU.[FN14] Furthermore, those convictions were never subsequently reversed on administrative appeal.[FN15] As a result, no admissible record evidence exists from which a rational factfinder could conclude that Plaintiff has established the third element of a retaliation claim—the existence of a causal connection between the protected speech and the adverse action.

FN14. *See Hynes v. Squillance,* 143 F.3d 653, 657 (2d Cir.1998) (holding that defendants met their burden of showing that they would have taken disciplinary action on valid basis alone where the evidence demonstrated that plaintiff had committed "the most serious, if not all, of the prohibited conduct"); *Jermosen v. Coughlin,* 86–CV–0208, 2002 WL 73804, at *2 (N.D.N.Y. Jan.11, 2002) (Munson, J.) (concluding, as a matter of law, that defendants showed by a preponderance of the evidence that they would have issued a misbehavior report against plaintiff even in the absence of his complaints against correctional department personnel, because they established that the misbehavior report resulted in a disciplinary conviction, "demonstrat[ing] that plaintiff in fact committed the prohibited conduct charged in the misbehavior report.").

FN15. For these reasons, the Court finds to be inapposite the case that Plaintiff cites for the proposition that the Court must accept as true his sworn denial that he committed any of the violations alleged in the misbehavior reports issued against him. *See Samuels v. Mockry,* 142 F.3d 134, 135–36 (2d Cir.1998) (addressing a situation in which a prisoner was placed in a prison's "Limited Privileges Program," upon a finding rendered by the prison's Program Committee, that he had refused to accept a

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

mandatory work assignment, *"without a hearing or a misbehavior report"* ) [emphasis added]. The Court would add only that, even if it were to accept Plaintiff's sworn denial as true, the Court would still find that he has failed to establish that Defendants Duckett and Norton would not have issued the misbehavior reports against him anyway, based on their subjective belief that he was acting in a disturbing, interfering, harassing and disobedient manner at the time in question (as evident from, *inter alia,* their misbehavior reports, the disciplinary hearing testimony of three of the Defendants, and admissions made by Plaintiff during his deposition regarding the "confusion" and "misunderstanding" that occurred during his examination by Defendant Norton, his persistent assertions about his prescribed frequency of visits, and his unsolicited comments about his proper course of treatment).

For each of these alternative reasons, Plaintiff's retaliation claim under the First Amendment is dismissed.

**B. Plaintiff's Claims Under the Eighth Amendment**

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's Eighth Amendment claims because (1) Plaintiff has failed to adduce any admissible evidence from which a rational factfinder could conclude that Defendant Norton used any force against Plaintiff, or was in a position to intervene to prevent the use of force against Plaintiff, yet failed to do so, (2) Plaintiff has failed to adduce any admissible evidence from which a rational factfinder could conclude that Defendant Broekema had a reasonable opportunity to intervene and prevent the alleged assault by Defendants Dinelle, DeLuca and Duckett, yet failed to do so, and (3) Plaintiff's identification of Defendant DeLuca is "very tentative."

As an initial matter, because Plaintiff did not oppose Defendants' argument that his excessive-force claim against Defendant Norton should be dismissed, Defendants' burden with regard to this claim "is lightened such that, in order to succeed, they need only show the facial merit of their request, which has appropriately been characterized as a 'modest' burden." *Xu–Shen Zhou v.*

*S.U.N.Y. Inst. of Tech.,* 08–CV–0444, 2011 WL 4344025, at *11 (N.D.N.Y. Sept.14, 2011)* (Suddaby, J.). After carefully considering the matter, the Court finds that Defendants have met this modest burden, for the reasons stated by them in their memoranda of law. The Court would add only that, based on its own independent review of the record, the Court can find no record evidence to support the claim that Defendant Norton used force against Plaintiff, or was in a position to intervene to prevent the use of force against Plaintiff, yet failed to do so. As a result, Plaintiff's Eighth Amendment claim against Defendant Norton is dismissed.

**\*9** Turning to Plaintiff's failure-to-intervene claim against Defendant Broekema, it is undisputed that it was Defendants Duckett, Dinelle and DeLuca who used force against Plaintiff. Plaintiff testified that, while Defendant Broekema was in the room at the time, Defendant Broekema was standing behind Defendant Dinelle on his "immediate right." In addition, Plaintiff testified that Defendant Duckett's threat of physical force against Plaintiff was conditioned on Plaintiff's continued failure to comply with (what Plaintiff perceived to be) conflicting instructions by Defendants Duckett and Dinelle during the frisk. (Dkt. No. 24, Attach. 4, at 97–99.) Furthermore, Plaintiff testified that it was only after he failed to put his hands in his pockets (rather soon after being warned by Defendant Duckett) that either Defendant Duckett or Defendant Dinelle punched him *one time* with a "closed fist" in the side of his nose, causing him to immediately fall to the ground. (*Id.* at 98–99.) Finally, Plaintiff testified that the kicks that he suffered soon after falling to the ground were limited in nature, having occurred only "a couple of times," and indeed having only *possibly* occurred. (*Id.* at 99.)

While the Court in no way condones the conduct alleged in this action, the Court is simply unable to find, based on the current record, that Plaintiff has adduced sufficient admissible record evidence to reach a jury on his Eighth Amendment claim against Defendant Broekema. Rather, based on the evidence presented, a rational factfinder could only conclude that the use of force was simply too uncertain for a reasonable person in Defendant Broekema's position to expect; and it was too brief in nature to give Defendant Broekema a realistic opportunity

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

to intervene in it, so as prevent the one punch and possibly few kicks that Plaintiff presumably experienced.[FN16]

> FN16. *See O'Neill v. Krzeminski,* 839 F.2d 9, 11–12 (2d Cir.1988) (noting that "three blows [that occurred] in such rapid succession ... [is] not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator"); *Blake v. Base,* 90–CV–0008, 1998 WL 642621, at *13 (N.D.N.Y. Sept.14, 1998) (McCurn, J.) (dismissing failure-to-intervene claim against police officer based on finding that the punch to the face and few body blows that plaintiff allegedly suffered "transpired so quickly ... that even if defendant ... should have intervened, he simply did not have enough time to prevent plaintiff from being struck"); *Parker v. Fogg,* 85–CV–0177, 1994 WL 49696, at *8 (N.D.N.Y. Feb.17, 1994) (McCurn, J.) (holding that an officer is not liable for failure-to-intervene if there "was no 'realistic opportunity' to prevent [an] attack [that ends] in a matter of seconds"); *see also Murray–Ruhl v. Passinault,* 246 F. App'x 338, 347 (6th Cir.2007) (holding that there was no reasonable opportunity for an officer to intervene when one officer stood by while another fired twelve shots in rapid succession); *Ontha v. Rutherford Cnty., Tennessee,* 222 F. App'x 498, 506 (6th Cir.2007) ("[C]ourts have been unwilling to impose a duty to intervene where ... an entire incident unfolds 'in a matter of seconds.' "); *Miller v. Smith,* 220 F.3d 491, 295 (7th Cir.2000) (noting that a prisoner may only recover for a correction's officer's failure to intervene when that officer "ignored a realistic opportunity to intervene").

Finally, based on the current record, the Court rejects Defendants' third argument (i.e., that Plaintiff's excessive-force claim against Defendant DeLuca should be dismissed because Plaintiff's identification of Defendant DeLuca is "very tentative"). Defendants argue that Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant DeLuca was present during the use of force

against Plaintiff (let alone that Defendant DeLuca used force against Plaintiff). This is because Plaintiff's basis for bringing his excessive-force claim against Defendant DeLuca is that he remembered being assaulted by three individuals, including Defendants Dinelle and Duckett, whose last names began with the letter "D." While this fact is undisputed, it is also undisputed that Defendant DeLuca was interviewed by the Inspector General's Office regarding his involvement in the incidents giving rise to Plaintiff's claims,[FN17] and that both Defendant Broekema's use-of-force report, and Defendant Broekema's Facility Memorandum, state that Defendant DeLuca participated in the use of force against Plaintiff.[FN18] Based on this evidence, a rational factfinder could conclude that Defendant DeLuca violated Plaintiff's Eighth Amendment rights. As a result, Plaintiff's Eighth Amendment excessive-force claim against Defendant DeLuca survives Defendants' motion for summary judgment. The Court would add only that, although it does not construe Plaintiff's Complaint as alleging that Defendant DeLuca failed to intervene in the use of force against Plaintiff, assuming, (based on Plaintiff's motion papers) that Plaintiff has sufficiently alleged this claim, the claim is dismissed because the entirety of the record evidence as it pertains to Defendant DeLuca establishes that he used force against Plaintiff.

> FN17. (Dkt. No. 27, Attach. 2, at 19–20.)

> FN18. (Dkt. No. 27, Attach. 2, at 10, 14.)

**C. Plaintiff's Claim Under the Fourteenth Amendment**

**\*10** As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of this claim because Defendants did not deprive Plaintiff of his liberty rights. As stated above in note 2 of this Decision and Order, Plaintiff failed to address Defendants' argument that his substantive due process claim should be dismissed. As a result, as stated above in Part III.B. of this Decision and Order, Defendants' burden with regard to this claim "is lightened such that, in order to succeed, they need only show the facial merit of their request, which has appropriately been characterized as a 'modest' burden." *Xu–Shen Zhou,* 2011 WL 4344025, at *11.

After carefully considering the matter, the Court finds

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

that Defendants have met this modest burden, for the reasons stated by them in their memoranda of law. The Court would add only that, based on its own independent review of the record, although the record evidence establishes that Plaintiff was confined in SHU for 150 days as a result of the misbehavior reports issued by Defendants Norton and Duckett, Plaintiff has failed to adduced admissible record evidence from which a rational factfinder could conclude that the conditions of his confinement during this 150–day period were more severe than normal SHU conditions.[FN19] As a result, Plaintiff's substantive due process claim is dismissed.

> FN19. *See* *Spence v. Senkowski,* 91–CV–0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (finding that 180 days that plaintiff spent in SHU, where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord, Husbands v. McClellan,* 990 F.Supp. 214, 217–19 (W.D.N.Y.1998) (180 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin,* 985 F.Supp. 350, 353–56 (W.D.N.Y.1997) (161 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky,* 96–CV–2003, 1997 WL 137448, at *4–6 (S.D.N.Y.1997) (192 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin,* 949 F.Supp. 112, 116–17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin,* 94–CV–4094, 1996 WL 487951, at *4–5 (S.D.N.Y. Aug.27, 1996) (210 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero,* 905 F.Supp. 99, 103–04 (W.D.N.Y.1995) (270 days in SHU under numerous conditions of confinement that

were more restrictive than those in general population).

**D. Defendants' Defense of Qualified Immunity**

As stated above in Part I.C. of this Decision and Order, Defendants seek dismissal of Plaintiff's claims on the alternative ground that they are protected from liability, as a matter of law, by the doctrine of qualified immunity, under the circumstances.

**1. Retaliation**

The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 [1982] ). Here, even assuming that Plaintiff's statement that he would contact an attorney regarding the use of force he experienced constitutes engagement in protected activity, and even also assuming that the only reason Defendant Norton and/or Duckett issued Plaintiff a misbehavior report was because he made this statement, these Defendants are, under the circumstances, entitled to qualified immunity. This is because the Court finds that the right to make this statement (without experiencing any resulting adverse action) was not a clearly established during the time in question (January 2009), based on a review of the relevant case law. *See, supra,* notes 12 and 13 of this Decision and Order.

As a result, Plaintiff's retaliation claim is dismissed on the alternate ground of qualified immunity.

**2. Excessive Force**

There is no doubt that the right to be free from the use of excessive force was "clearly established" at the time of the incidents giving rise to Plaintiff's claims. *See, e.g., Hudson v. McMillian,* 503 U.S. 1, 9–10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Moreover, with regard to whether it was objectively reasonable for Defendants to use the alleged amount of force that they used, the Second Circuit has made clear that, "[w]here the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." *Mickle v. Morin,* 297 F.3d 114, 122 (2d Cir.2002) [internal quotation marks omitted].

**\*11** Here, after carefully reviewing the record, and construing it in the light most favorable to Plaintiff, the Court finds that, even if Defendants Dinelle, DeLuca and Duckett genuinely feared being assaulted by Plaintiff, and even if those three Defendants genuinely perceived Plaintiff's words and movements to constitute an attempt to resist a frisk, admissible record evidence exists from which a rational jury could conclude that those perceptions were not objectively reasonable under the circumstances. As the Second Circuit has observed, it is impossible to "determine whether [Defendants] reasonably believed that [their] force was not excessive when several material facts [are] still in dispute, [and therefore,] summary judgment on the basis of qualified immunity [is] precluded." *Thomas v. Roach,* 165 F.3d 137, 144 (2d Cir.1999).[FN20] For these reasons, the Court rejects Defendants' argument that Plaintiff's excessive-force claim should be dismissed on the ground of qualified immunity as it relates to Defendants Dinelle, DeLuca and Duckett.

> FN20. *See also* *Robison v. Via,* 821 F.2d 913, 924 (2d Cir.1987) ( "[T]he parties have provided conflicting accounts as to [who] initiated the use of force, how much force was used by each, and whether [the arrestee] was reaching toward [a weapon]. Resolution of credibility conflicts and the choice between these conflicting versions are matters for the jury and [should not be] decided by the district court on summary judgment.").

However, the Court reaches a different conclusion with regard to Plaintiff's failure-to-intervene claim against Defendant Broekema: the Court finds that, at the very least, officers of reasonable competence could disagree on the legality of Defendant Broekema's actions, based on the current record. As a result, Plaintiff's failure-to-intervene claim against Defendant Broekema is dismissed on this alternative ground.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for partial

summary judgment (Dkt. No. 24) is ***GRANTED*** in part and ***DENIED*** in part in the following respects:

(1) Defendants' motion for summary judgment on Plaintiff's First Amendment claim is ***GRANTED;***

(2) Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment substantive due process claim is ***GRANTED;***

(3) Defendants' motion for summary judgment on Plaintiff's Eighth Amendment excessive-force claim against Defendant Norton is ***GRANTED;***

(4) Defendants' motion for summary judgment on Plaintiff's Eighth Amendment failure-to-intervene claim against Defendant Broekema is ***GRANTED;*** and

(5) Defendants' motion for summary judgment on Plaintiff's Eighth Amendment excessive-force claim against Defendant DeLuca is ***DENIED;*** and it is further

**ORDERED** that the following claims are ***DISMISSED*** **with prejudice** from this action:

(1) Plaintiff's First Amendment claim;

(2) Plaintiff's Fourteenth Amendment substantive due process claim;

(3) Plaintiff's Eighth Amendment excessive-force claim against Defendant Norton; and

(4) Plaintiff's Eighth Amendment failure-to-intervene claim against Defendant Broekema; and it is further

**ORDERED** that Defendants Norton and Broekema are ***DISMISSED*** from this action; and it is further

**ORDERED** that, following this Decision and Order, the following claims remain pending in this action: Plaintiff's Eighth Amendment excessive-force claim against Defendants DeLuca, Dinnelle and Duckett; and it is further

**\*12 ORDERED** that counsel are directed to appear

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

on **JANUARY 4, 2012 at 2:00 p.m.** in chambers in Syracuse, N.Y. for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiff is further directed to forward a written settlement demand to defendants no later than **DECEMBER 16, 2011,** and the parties are directed to engage in meaningful settlement negotiations prior to the 1/4/12 conference.

N.D.N.Y.,2011.

Henry v. Dinelle
Slip Copy, 2011 WL 5975027 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

189 F.3d 460
Unpublished Disposition
NOTICE: THIS IS AN UNPUBLISHED OPINION.
(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing in
the Federal Reporter. See Federal Rule of Appellate
Procedure 32.1 and this court's local Rule 32.1.1. for
rules regarding the citation of unpublished opinions.)
United States Court of Appeals, Second Circuit.

John L. HINES,Jr., Plaintiff-Appellant,

v.

Peter J. LACY, Superintendent, Bare Hill
Correctional Facility; Dale Warner, R.P.I.,
Recreational Worker responsible for Recreational
Program at Bare Hill Correctional Facility;
Charles T. Goeke, R.P.I., Recreational Worker
responsible for Recreational Program at Bare Hill
Correctional Facility; Medical Personnel at Bare
Hill Correctional Facility, Defendants-Appellees.

No. 98-2961.  |  Aug. 20, 1999.

Appeal from the United States District Court for the Northern
District of New York (Neal P. McCurn, *Judge* ).

Present: CALABRESI, CABRANES, and SOTOMAYOR,
Circuit Judges.

**Opinion**

 *1  John L. Hines, Jr., appeals from a final order of the
United States District Court for the Northern District of New
York (Neal P. McCurn, *J.*) granting defendants-appellees'
motion to dismiss his complaint pursuant to Federal Rule of
Civil Procedure 12(b)(6). We affirm the judgment below, as
modified.

### BACKGROUND

Hines, who was at all relevant times an inmate at the Bare
Hill Correctional Facility, operated by the New York State
Department of Correctional Services, brought this suit *pro se*
under 42 U.S.C. § 1983 (1994), alleging that prison officials
had violated his Eighth Amendment right to freedom from
cruel and unusual punishment.

Hines's complaint alleges that, on August 8, 1996, he was
playing a game of basketball with other inmates in the annex
yard of the prison, refereed by two "civilians." After the game,
Hines was approached by an inmate who had played on the
opposing team. The other inmate was yelling and swearing
loudly at Hines and appeared very agitated and upset. A crowd
of about fifty or sixty inmates gathered around Hines and
the other inmate, and Hines saw the two "civilians," who
had refereed the game, standing by and watching while the
altercation took place. When the agitated inmate came face to
face with Hines, he "immediately" punched him in the face;
Hines fell backward, hit his head on the concrete pavement of
the yard, and lost consciousness.

According to the complaint, Hines does not remember being
taken to the hospital and "has no recollection of what type of
medical attention he received"; his next memory is of being
released from the hospital a week later, on August 15. After
his release from the hospital, Hines suffered from amnesia,
impairments of taste, smell, and hearing, weight loss, and
back pain. Although he informed prison officials of these
symptoms, he was not taken to a doctor outside the prison
until forty-five days after the assault.

Hines also complained of disciplinary actions taken against
him by the prison, and the prison's failure to transfer either
him or the inmate who attacked him to another facility.

Hines named as defendants:

> Peter J. Lacy, employed as
> Superintendent of the Bare Hill
> Correctional Facility, [who] is
> responsible for the overall operations
> of the facility; Dale Warner, employed
> as an R.P.I., also know[n] as
> a recreational worker, [who] is
> responsible for the overall operations
> of the recreational program at the Bare
> Hill Correctional Facility; Charles T.
> Goe[k]e, employe[d] as an R.P.I.,
> also known as a recreational worker,
> [who] is responsible for the overall
> operations of the recreational program
> at the Bare Hill Correctional Facility;
> Medical Personnel, responsible for the
> care and treatment of inmates at the
> Bare Hill Correctional Facility.

Hines alleged that the defendants had failed to protect him from the assault by the other inmate; that he had received inadequate medical care, resulting in permanent hearing loss and other ailments; and that the disciplinary sanctions taken against him constituted cruel and unusual punishment.

**\*2** The defendants moved to dismiss Hines's complaint on the ground that he had not stated a claim under § 1983. The motion was referred to a magistrate judge, who recommended dismissing Hines's claims against Superintendent Lacy, as well as all Hines's claims for inadequate medical treatment. The magistrate recommended, however, that the court deny the motion to dismiss Hines's claims against Warner and Goeke for failure to protect him from the assault. He issued his Report-Recommendation on July 10, 1998; it included a statement notifying the parties that they had ten days to file written objections to the report, and that failure to do so within ten days would bar appellate review.

The defendants filed timely objections to the part of the magistrate's report that recommended denying the motion to dismiss the failure to protect claim against Warner and Goeke. Hines filed no objections to the report.

The district court declined to follow the magistrate's recommendation as to the failure to protect claim against Warner and Goeke. In a brief unpublished order, the court stated:

> The complaint herein is completely void of any allegation that defendants Warner and Goeke engaged in any activity which deprived plaintiff of a constitutional right. His allegations that they were "responsible for the overall operation of the recreational program at the Bare Hill Correctional Facility" does [sic] not in this court's opinion give rise to an expansive reading of the complaint (called for in *pro se* litigation) to include a failure to protect claim based on indifference and disregard to an excessive risk to plaintiff's health and safety. In addition, plaintiff fails to set forth any facts in his complaint which would support a requisite finding that defendants Warner and Goeke did or should have known of a substantial risk to plaintiff in the circumstances.

(Citation omitted). Accordingly, the court dismissed Hines's entire complaint. This appeal followed.

## DISCUSSION

On appeal, Hines (now counseled) contends that the district court erred in dismissing his complaint, and also argues that he should now be allowed to amend the complaint.

### *A. Waiver*

Because Hines failed to file any objections to the magistrate's report, he has waived appellate review of his claims against Superintendent Lacy and the Bare Hill medical personnel.

This Circuit has held that failure to file a timely objection to a magistrate's report waives further judicial review of the magistrate's decision; with respect to a *pro se* party, however, failure to file an objection constitutes a waiver only if the magistrate's report explicitly states that failure to object within ten days will preclude appellate review, and specifically cites 28 U.S.C. § 636(b)(1) and Federal Rules of Civil Procedure 6(a), 6(e), and 72. *See Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam). Since the magistrate's Report-Recommendation precisely followed those requirements, Hines's failure to object within ten days waived his right to appeal that portion of the district court's order that adopted the recommendations to dismiss.

**\*3** Therefore, the only claim before us is Hines's contention that defendants Warner and Goeke failed to protect him from assault, in violation of his Eighth Amendment rights.

### *B. Hines's Claim for Failure to Protect Against Warner and Goeke*

We review *de novo* a district court's decision to dismiss a complaint under Rule 12(b)(6), accepting the factual allegations in the complaint as true. *See Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Moreover, "we read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d

Cir.1994)). Even reading his complaint liberally, however, Hines has failed to state a claim against Warner and Goeke, because he did not assert specific facts sufficient to make out a claim under the governing standard for Eighth Amendment violations.

It is settled that, under the Eighth Amendment, "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship,* 842 F.2d 556, 558 (1st Cir.1988)) (internal quotation marks omitted). In *Farmer,* the Supreme Court set out the two-pronged test that determines when a failure to protect a prison inmate from assault by other inmates rises to the level of a constitutional violation. First, the prisoner must have been "incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. Second, the prison official must have shown "deliberate indifference" to the prisoner's safety. *Id.* Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Hines's complaint does not satisfy either prong of the *Farmer* test, because Hines's sketchy description of a verbal confrontation does not sufficiently allege "conditions posing a substantial risk of serious harm" or that the employees, with knowledge of the need to intervene, had time to do so before plaintiff was assaulted. For these reasons, we affirm the district court's dismissal of Hines's complaint. [1]

### C. Hines's Request to Amend His Complaint

**\*4** We have frequently said that in *pro se* cases, dismissal should allow the complainant at least one chance to amend. *See Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999) (per curiam) (stating that "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim," it should give a *pro se* litigant an opportunity to amend); *DeCarlo v. Fry,* 141 F.3d 56, 62 (2d Cir.1998) (a *pro se* "plaintiff[ ] should have had at least one further opportunity to state [her] claims as best [she] could," even where the district court properly dismissed the original complaint).

It is possible that, in an amended complaint, Hines could adduce further specific facts about what was said during the verbal confrontation to demonstrate that the defendants knew that the confrontation, if ignored, posed a substantial risk of serious harm to the plaintiff and that the employees, with knowledge of the risk, had time to intervene before the one punch occurred. Accordingly, although we affirm the district court's dismissal, we modify its judgment to grant plaintiff leave to file an amended complaint, limited to the claims against Warner and Goeke for failure to protect Hines from the assault. The amended complaint shall be filed within such time as the district court allows.

### All Citations

189 F.3d 460, 1999 WL 642915 (Table)

### Footnotes

1    We note, in addition, that it is not clear from his complaint whether Hines is alleging that Warner and Goeke were actually present when the assault occurred, or whether he is making a *respondeat superior* claim, which is not cognizable under § 1983, *see, e.g., Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) (per curiam). Hines identified Warner and Goeke in a sheet attached to the complaint, which listed all the defendants, as "recreational worker[s]," but also described them as "responsible for the overall operations of the recreational program at the Bare Hill Correctional Facility," which suggests that Hines was making a *respondeat superior* claim. Moreover, while Hines alleged in his complaint that two "civilian" recreational workers were present during the assault, he named the workers only as "John Doe 1" and "John Doe 2," raising some doubt as to whether Warner and Goeke were actually the workers present when he was attacked.
    On the other hand, a cover sheet attached to Hines's complaint identifies two of the defendants as "Recreational Civilians known as 'CHARLIE and SPIKE.' " It is a possible inference that the recreational civilians Charlie and Spike are the same people as the recreational workers Charles Goeke and Dale Warner. And Hines consistently alleged that two recreational workers were present during his assault and failed to stop it.
    Because Hines is to be given an opportunity to amend his complaint for other reasons, we assume he will clarify whether his claims against Goeke and Warner are based on their personal presence at the altercation that is the subject of

his complaint. Accordingly, we need not decide whether, without such clarification, his complaint sufficiently alleges their personal involvement.

**End of Document**                                        © 2015 Thomson Reuters. No claim to original U.S. Government Works.



Not Reported in F.Supp.2d, 2001 WL 798002 (S.D.N.Y.), 50 Fed.R.Serv.3d 865
(Cite as: 2001 WL 798002 (S.D.N.Y.))

**H**

United States District Court, S.D. New York.
Chrisner DESULMA, Plaintiff,
v.
THE CITY OF NEW YORK, et al., Defendants.
**No. 98Civ.2078(RMB)(RLE).**

July 6, 2001.

REPORT AND RECOMMENDATION

ELLIS, Magistrate J.

I. INTRODUCTION

**\*1** *Pro se* incarcerated plaintiff Chrisner Desulma ("Desulma") sued the City of New York and two Department of Corrections officers alleging violation of his Eighth and Fourteenth Amendment rights while he was an inmate on Rikers Island. Compl.FN1 His claims were thereafter dismissed except as against defendant Goolsby, who has brought the instant motion for summary judgment. For the reasons which follow, I respectfully recommend Goolsby's motion be GRANTED.

> FN1. "Compl." refers to plaintiff's complaint, dated January 5, 1998.

II. BACKGROUND

A. Factual Background

The following account is based on Desulma's complaint and deposition testimony. The events which give rise to this cause of action occurred on December 27, 1996, when

Desulma was incarcerated in the Adolescent Detention and Reception Center ("ADRC") at Rikers Island Compl.¶ 8. At midday, Desulma and approximately fifty other inmates from his housing unit were escorted in a line to the mess hall by officers Goolsby and an unidentified officer, "Jane Doe." *Id.* ¶ 9; Tr. at 83. Two inmates standing near Desulma in the line began "menacing" him by making unspecified threats and racial insinuations. Tr. at 58-59, 75-77. Desulma testified that officer Goolsby witnessed these threats. Tr. at 63, 79-80. Desulma requested protection, but Goolsby told him to defend himself. Tr. at 81.

During the meal, Desulma sat away from the inmates who bothered him. Tr. at 85. After the meal, as the group was preparing to leave the mess hall, Desulma attempted to ask Goolsby for protective measures against these inmates, whom he feared. Tr. at 134, 138. Although he did not find Goolsby, Desulma succeeded in speaking to Doe. *Id.* at 133-35. Desulma claims that Doe ignored his request for protective measures and instructed him to get into the line. Tr. at 134-135.

The inmates who had earlier threatened Desulma were again standing near him in line. *Id.* at 138. They began to "bother" Desulma, telling him that he "smell [ed]." Tr. at 141. Desulma later submitted changes to his deposition in which he claims the inmates said, "kill this negro, get you, we are going to get you stinky." Tr. Ch. 6.FN2 Following their verbal abuse, the inmates attacked Desulma using their fists and a sharp weapon. Tr. at 141-43. They beat Desulma all over his body and slashed his face with the weapon, leaving a permanent scar. *Id.* at 143.

> FN2. "Tr. Ch." refers to Desulma's April 20, 2000, changes to his deposition transcript.

Desulma called for help during the attack, but the escorting officers did not intervene. *Id.* at 145. As Desulma attempted to run away from his attackers, he fell onto the floor near Doe's feet. *Id.* Desulma alleges that no correctional officer sought medical assistance until he "fell to the floor in a pool of blood," Compl. ¶ 18, at which point Doe called for emergency assistance over her radio

Not Reported in F.Supp.2d, 2001 WL 798002 (S.D.N.Y.), 50 Fed.R.Serv.3d 865
(Cite as: 2001 WL 798002 (S.D.N.Y.))

transmitter. *Id.* at ¶ 21. Desulma originally testified that Goolsby was not on the scene until Doe called for help, Tr. at 134, 138, 149, but later asserted that he had seen Goolsby "a few seconds" before and after the incident. Tr. Ch. at 6.

**\*2** Approximately twenty-five officers responded to Doe's call. Tr. at 147-49. The officers transported Desulma to the facility's medical clinic, Tr. at 150, where he received treatment requiring a total of twelve stitches. Com pl. ¶ 19-20. Desulma was subsequently transferred to live in a separate housing unit. Glass. Decl. ¶ 22.[FN3]

> FN3. "Glass Decl." refers to the declaration of Bryan D. Glass in support of defendant's motion to declare plaintiff's deposition transcript changes null and void.

B. Procedural Background

Desulma filed the instant complaint on January 5, 1998, against the City of New York and correctional officers Goolsby and Jane Doe, in their individual and official capacities, for failure to protect Desulma from other inmates during an incident at Riker's Island. He alleges violation of his Eighth and Fourteenth Amendment rights, *see* Compl. ¶ 32, and various tort violations under New York state law. *Id.* ¶ 34. Specifically, he alleges that Goolsby, "with deliberate indifference," failed to separate him from a group of inmates who had threatened him and "deliberately refused" to grant his request for protection. *Id.* ¶ 29-30.

At a status conference before Judge Shira A. Sheindlin on November 5, 1998, the complaint was dismissed with respect to all defendants except officer Goolsby. The ruling was confirmed in a written order issued by Judge Richard M. Berman on December 21, 1998. On December 3, 1998, Goolsby served an answer to the complaint, and discovery progressed as ordered. Desulma was deposed on April 23, 1999 and May 17, 1999.

In January 1999, Desulma requested that discovery materials be translated into Creole and that counsel be

appointed to assist him. The Court denied those requests by order dated March 16, 1999. On October 13, 1999, after the close of discovery, Goolsby filed the present motion. Desulma requested and received an extension of time, until January 14, 2000, in which to respond to Goolsby's motion. On December 24, 1999, Desulma requested an audiotape recording of his deposition. *See* Glass Decl., Exh. C. In an Order dated February 25, 2000, the Court denied the request, as no tapes existed, but granted Desulma permission to submit corrections to his deposition transcripts by April 21, 2000. *Id.,* Exh. D.

On April 20, 2000, Desulma filed, and served Goolsby with, fourteen pages of changes to the deposition. *Id.,* Exh. A. Goolsby objected and, on June 1, 2000, moved to have the changes declared null and void for failure to comply with Rule 30(e) of the Federal Rules of Civil Procedure. Goolsby argued that the changes were "a deliberate attempt by plaintiff to tailor his testimony to defeat defendant's previously served summary judgment motion." *See* Glass Decl.

On June 19, 2000, the Court ordered Desulma to have his changes signed and sworn, to fully explain each change, and to respond to Goolsby's motion by July 19, 2000. Desulma responded on July 11, 2000, by submitting to the Court the same fourteen pages of deposition transcript changes he had originally filed, along with a sworn affidavit and a declaration of service. He did not, however, submit explanations for his changes or respond to Goolsby's motion. Instead, Desulma requested, and was granted, extensions of time in which to comply with the court's Order of June 19, 2000, and in which to respond to Goolsby's motion for summary judgment. Desulma filed his response on November 16, 2000. The case was referred to the undersigned on December 28, 2000, and the motion was fully submitted when Goolsby filed reply papers on January 5, 2001.

C. The Instant Motion

**\*3** Goolsby argues that Desulma did not establish the elements of an Eighth Amendment "failure to protect" claim under § 1983 for three reasons: (1) he failed to show he was incarcerated under conditions posing a substantial risk of serious harm; (2) he failed to show Goolsby acted

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 798002 (S.D.N.Y.), 50 Fed.R.Serv.3d 865
(Cite as: 2001 WL 798002 (S.D.N.Y.))

with a sufficiently culpable state of mind; and (3) Goolsby is immune from liability under the doctrine of qualified immunity. *See* Def. Mem.[FN4]

> FN4. "Def. Mem." refers to Goolsby's memorandum of law in support of the motion for summary judgment, dated October 13, 1999.

Relying primarily on the deposition transcript changes he filed, Desulma contends that officer Goolsby acted with deliberate indifference to his safety and well-being by disregarding his requests for protective measures and by failing to intervene in the attack. Pl. Resp. at 11, 19, 22, 25.[FN5] Desulma also contends that Goolsby is not immune under the doctrine of qualified immunity. *Id* . at 17-18. Goolsby argues that Desulma should not be permitted to rely on the deposition transcript changes, and that, even if the changes were accepted into the record, Desulma cannot establish that Goolsby was deliberately indifferent to a substantial risk of serious harm to plaintiff. *See* Def. Rep.[FN6]

> FN5. "Pl. Resp." refers to Desulma's "motion for summary judgment and in opposition to defendant's motion for summary judgment," dated November 16, 2000.

> FN6. "Def. Rep." refers to Goolsby's reply to Desulma's response to the instant motion.

## III. DISCUSSION

### A. Standards for Motion for Summary Judgment

A court shall grant a motion for summary judgment if it determines that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P. 56(c)*. Under this standard, summary judgment is proper if "viewing the record in the light most favorable to the nonmoving party, the evidence offered demonstrates that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law." *Pension Benefit Guar. Corp. v. LTV Corp.,*

*875 F.2d 1008, 1015 (2d Cir.1989)* (internal quotations omitted), *rev'd on other grounds, 496 U.S. 633 (1990)*. In making this determination, the court does not resolve disputed factual issues, but reaches a conclusion as to whether there exists "a genuine and material issue for trial." *Hudson Hotels Corp. v. Choice Hotels Int'l, 995 F.2d 1173, 1175 (2d Cir.1993)*. An issue of fact is "genuine" if it provides a basis for "a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)*. If the record contains evidence which supports a reasonable inference in favor of the nonmoving party on the issues presented in the motion, summary judgment is not appropriate. *See Knowles v. New York City Dept. of Corrections, 904 F.Supp. 217, 220 (S.D.N.Y.1995)*.

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568 (2d Cir.1993)* (*citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)*). This burden may be met by demonstrating that there is a lack of evidence to support the nonmoving party's claim. *See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)*. The nonmoving party must then set forth "specific facts showing that there is a genuine issue for a trial." *Fed.R.Civ.P. 56(e)*; *Celotex Corp., 477 U.S. at 321-22*. A nonmoving party may not rely on conclusory allegations or conjecture to create disputed fact issues. *Lipton v. Nature Co., 71 F.3d 464, 469 (2d cir.1995)*; *Thomas v. Keane, 2001 WL 410095 (April 23, 2001)*. Even in cases involving *pro se* plaintiffs, where the court has an obligation to construe the plaintiff's papers liberally, *Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir.1988)*, these same standards for dismissal apply. *Thomas, 2001 WL 410095*, at [*]3 (*citing Lee v. Artuz, 2000 WL 231083*, at [*]2 (S.D.N.Y. Feb. 29, 2000)).

### B. Deposition Transcript Changes

[*]4 *Rule 30(e)* of the Rules of Federal Procedure permits a witness to review the transcript of her deposition and make changes "in form or in substance" within thirty days of notification by the court reporter that the transcript is ready for review, and requires that the deponent sign a statement setting forth the reasons for each change. *Rule 30(e), Fed.R.Civ.P.* Courts have construed the Rule broadly, even accepting changes which contradict original

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 798002 (S.D.N.Y.), 50 Fed.R.Serv.3d 865
(Cite as: 2001 WL 798002 (S.D.N.Y.))

testimony. *Hlinko v. Virgin Atlantic Airways,* 1997 WL 68563 (S.D.N.Y. Feb. 19, 1997) (*citing, inter alia, Podell v. Citicorp Diners Club, Inc.,* 914 F.Supp. 1025, 1034 (S.D.N.Y.1996). Original answers remain admissible at trial as admissions of a party. *Podell.,* 914 F.Supp. at 1034.

Desulma's submission of transcript changes include the following material changes to his initial testimony: (1) the two inmates who attacked him had harassed him the day before the incident, Tr. Ch. at 2; (2) he alerted Goolsby about the harassment the day before the incident, *id.;* (3) Goolsby was actually on the scene during the incident, Tr. Ch. at 6; (4) the two inmates threatened him with a knife when they verbally harassed him prior to the incident, Tr. Ch. at 4; (5) and the attackers said "kill this negro, get you, we are going to get you stinky," before attacking him. Tr. Ch. at 6.

Goolsby argues that the Desulma's changes should be rejected because they were tailored to oppose Goolsby's motion for summary judgment and do not comply with Rule 30(e). *See* Def. Rep. Desulma never submitted explanations as ordered by this Court on July 19, 2000, but maintains that the transcript changes were warranted because his interpreter had not translated his answers accurately. Pl. Resp. at 13. Although Rule 30(e) "does not require a judge to examine the sufficiency, reasonableness, or legitimacy of the reasons for the changes," *Podell v. Citicorp Diners Club, Inc .,* 914 F.Supp. at 1035, a court is free to reject changes in extreme situations. *See, e.g., Baker v. Ace Advertiser's Service,* 134 F.R.D. 65 (S.D.N.Y.1991) (changes rejected where they were so far-reaching as to render the transcript a nullity). A court may reopen deposition if the changes to the transcript are made without adequate reasons, or if they are so substantial as to render the transcript incomplete or useless. *See Hlinko v. Virgin Atlantic Airways,* 1997 WL 68563,[*]1 (*citing Allen & Co. v. Occidental Petroleum Corp.,* 49 F.R.D. 337, 341 (S.D.N.Y.1970).

Here, although Desulma's changes are not so substantial as to render the transcript incomplete or useless, Desulma never submitted explanations for his changes as required by Rule 30(e) and as ordered by this Court on July 19, 2000. The explanation Desulma offers in his opposition papers to the instant motion (that his changes were made

to correct the mistranslations of his Creole interpreter, *see* Pl. Resp. at 13) does not constitute "a statement reciting such changes and the reasons given by the deponent for making them." Fed.R.Civ.P. Rule 30(e). Furthermore, Desulma's explanation does not satisfy this Court's July 19, 2000 order instructing plaintiff to "fully explain each and every change made to the transcript." Desulma's changes are therefore unacceptable.

**\*5** Moreover, to allow Desulma's changes under these circumstances would permit him to tailor his testimony to meet specific deficiencies in his evidence. As a general proposition, a party may not rely on an affidavit that contradicts his deposition testimony in order to defeat a pending motion for summary judgment. *See, e.g ., Hale v. Mann,* 219 F.3d 61, 74 (2d Cir.2000) ( "[I]t is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.") (*quoting Mack v. United States,* 814 F.2d 120, 124 (2d Cir.1987)). Similarly, Desulma's contradictory deposition changes, submitted to the Court six months after Goolsby filed her motion for summary judgment, should not provide a basis for avoiding summary judgment. The Court finds that, even if Desulma's changes did conform to the requirements of Rule 30(e), Desulma would not be permitted to rely upon them in opposing the instant motion.

C. 42 U.S.C. § 1983

In order to maintain a claim under Section 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law, and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States. *Mendez v. Walker,* 110 F.Supp.2d 209, 213 (*citing Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993)). Desulma has properly alleged that Goolsby, as a correctional officer, was acting under color of state law and that her conduct resulted in a violation of his Eighth Amendment rights.

As a prerequisite to bringing suit, a plaintiff must also show a defendant's direct or personal involvement in the alleged Constitutional deprivation. *Colon v. Coughlin,* 58

Not Reported in F.Supp.2d, 2001 WL 798002 (S.D.N.Y.), 50 Fed.R.Serv.3d 865
(Cite as: 2001 WL 798002 (S.D.N.Y.))

F.3d 865, 873 (2d Cir.1995); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). Personal involvement may take one of four forms: (1) direct participation in the infractions; (2) failure of a supervisory official to remedy wrong after learning of violation; (3) creation or sanction by a supervisory official of policy or custom under which unconstitutional practices occur; or, (4) gross negligence in managing subordinates. *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986).

Goolsby maintains that she is not liable because she was not present at the time of the slashing. Def. Mem. at 16-17. In fact, the record does not establish Goolsby's location during the slashing. Desulma testified that he was unable to locate Goolsby as the inmates were leaving the mess hall, Tr. 134, and did not see her again until after the incident when Doe called for assistance. Tr. 138, 149. In his reply papers, Desulma claims he "was assaulted in [the] presence of the same two corrections officers, Goolsby and Doe ." Pl. Rep. at 22. And in his changes to the transcript, Desulma claims that he saw Gooslby "before and after" the slashing. Tr. Ch. at 6. Whether Desulma saw Goolsby is not dispositive. Goolsby may have been present even if Desulma did not see her. Defendant has not offered any evidence to suggest that she was not there. Moreover, Desulma need not prove Goolsby's presence at the scene to prevail on his claim that she was deliberately indifferent to a substantial risk of serious harm to him. Construing all pleadings and evidence in Desulma's favor, Goolsby's knowledge of the events leading up to the attack would be enough to establish personal involvement for the purposes of 42 U.S.C. § 1983.

C. Eighth Amendment

**\*6** The Eighth Amendment, applicable to the states through the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishment. Failure-to-protect claims, because they are treated as challenges to conditions of confinement, are analyzed under the Eighth Amendment. *See, e.g., Farmer v. Brennan,* 511 U.S. 826 (1994); *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997) (stating that Eighth Amendment imposes on prison officials "a duty to protect prisoners from violence at the hands of other prisoners"); *Edney v. Karringan,* 69 F.Supp.2d 540, 544 n. 1 (S.D.N.Y.1999).

To prevail in a failure-to-protect case, a prisoner must establish that (1) he is incarcerated under conditions posing a "substantial risk of serious harm," *Farmer,* 511 U.S. at 834 (citing *Helling v. McKinney,* 509 U.S. 25 (1993)), and that (2) the prison official acted with "deliberate indifference" to the prisoner's health or safety. *Farmer,* 511 U.S. at 828 (citing *Helling,* 509 U.S. 25; *Wilson v. Seiter,* 501 U.S. 294 (1991); *Estelle v. Gamble,* 429 U.S. 97 (1976)).

While the first part of the test is an objective determination about the severity of the conditions under which plaintiff is incarcerated, *see Farmer,* 511 U.S. at 834, the second part of the test invokes a subjective standard akin to criminal recklessness such that the defendant must "consciously disregard" a substantial risk of serious harm. *Id.* at 839-40. The official "has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Hayes,* 84 F.3d at 620. The official must be aware of the risk or aware of facts from which the inference of risk could be drawn, and she must also draw the inference. *Farmer,* 511 U.S. at 837; *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) (*quoting Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)).

1. Objective Test: Conditions of Plaintiff's Incarceration

Desulma does not succeed in showing that he was incarcerated under conditions posing a substantial risk of serious harm, a standard which "contemplates 'a condition of urgency, one that may produce death, degeneration, or extreme pain," *Hathaway,* 37 F.3d at 66 (*quoting Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting)), for two reasons. First, Desulma does not show that the risk he faced was *substantial.* Second, he fails to show that the risk-to the extent that one existed-was one of *serious* harm.

Desulma had no prior altercations with the inmates who attacked him. He testified that he had never complained about them or requested separation from them before, *id.* at 160; that he did not know his attackers at the time of the

Not Reported in F.Supp.2d, 2001 WL 798002 (S.D.N.Y.), 50 Fed.R.Serv.3d 865
(Cite as: 2001 WL 798002 (S.D.N.Y.))

incident, Tr. 52; and that he only became "enemies" with them en route to the mess hall. Tr. at 60. Desulma later asserts, by changing "no" answers to "yes" answers in the deposition transcript, that he did have an altercation with the same inmates previously, Tr. Ch. 2-3, 8, and adds that he had previously asked Goolsby for protection from the inmates. *Id.* at 8-9. Desulma does not describe the prior altercation.

**\*7** Nothing on the record or in the revisions shows that the inmates posed a substantial threat. By Desulma's account, the inmates told him he was "going to pay a price" and told him to get away from them because "he smell[ed]." Tr. at 59-60. These verbal statements alone do not indicate a substantial threat of serious harm. Indeed, Desulma even surmised that "the officers thought that was just words; they didn't believe anything could happen." Tr. at 63, 80. Finally, although Desulma changed his testimony to reflect that the inmates had actually threatened him with a knife, Tr. Ch. at 4, that fact alone would not be enough to establish a substantial risk.

2. Subjective Test: Defendant's Mental State

Desulma is also unable to show that Goolsby acted with the state of mind necessary to establish an Eighth Amendment violation. Desulma may properly rely on circumstantial evidence to prove Goolsby acted with the requisite mental state, because "[d]irect evidence that prison officials knew of and disregarded a serious risk of harm to a prison inmate will rarely be available," *Matthews v. Armitage,* 36 F.Supp. 121, 125 (N.D.N.Y.1999) (*citing Coppage v. Mann,* 906 F.Supp. 1025, 1036 (E.D.Va.1995)). The evidence he submits, however, fails to support the conclusion he argues before this Court. The record supports the conclusion that Goolsby was aware that Desulma feared his attackers because Desulma requested protective measures en route to the mess hall,[FN7] and because Goolsby witnessed the verbal altercation. However, given the lack of a prior history of violence between Desulma and those inmates, and the nature of the inmates' verbal threats against Desulma, Goolsby had no reason to infer the existence of a threat of harm, much less a life-threatening danger, as Desulma claims. Pl. Rep. at 21.

FN7. Desulma testified that he asked Goolsby for protection during a prior, unrelated altercation with two other inmates over the use of a telephone. *Id.* at 163-64. However, that testimony does not bolster Desulma's case because the request would not have put Goolsby on notice that Desulma risked harm from the two inmates involved in *this* case.

Goolsby's failure to intervene in the attack is not, by itself, a basis for liability. Although "[a] correctional officer's presence at an attack of an inmate, where he does nothing to stop an assault, may be sufficient to establish a claim under Section 1983," *Dresdner v. Brockton* (*citing Morales v. New York State Department of Corrections,* 842 F.2d 27 (2d Cir.1988)), an isolated omission to act by a state prison guard must be accompanied by evil intent, recklessness, or at least deliberate indifference to the consequences of the conduct. *Bass v. Jackson,* 790 F.2d 260, 262-63 (2d Cir.1986) (*quoting Ayers v. Coughlin,* 780 F.2d 205, 209 (2d Cir.1985); *Williams v. Vincent,* 508 F.2d 541, 546 (2d Cir.1974)). The defendant must also be shown to have had "an extended opportunity to stop the attack but failed to take any action to do so." *Rucco v. Howard,* 1993 WL 299296 (S.D.N.Y. Aug. 4, 1993) (*citing Williams,* 508 F.2d at 546).

Here, there is no evidence that Goolsby deliberately disregarded Desulma's safety or had an opportunity to intervene in the attack. The fact that Doe called for help and Goolsby appeared shortly thereafter suggests that both officers responded immediately to the attack. At most, Goolsby's failure to heed Desulma's initial request for protection was negligent, and negligence is not a sufficiently culpable mental state for liability to attach in a failure-to-protect cases. *See Davidson v. Cannon,* 474 U.S. 344 (1986); *Hayes v. New York City Dep't of Corrections,* 84 F.3d 614, 620 (2d Cir.1996).

C. Qualified Immunity

**\*8** Under 42 U.S.C. § 1983, a public official is entitled to qualified immunity if her acts did not violate clearly established rights of which a reasonable officer would have known, or if she reasonably believed that her conduct did not violate those rights. *See Harlow v. Fitzgerald,* 457,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 798002 (S.D.N.Y.), 50 Fed.R.Serv.3d 865
(Cite as: 2001 WL 798002 (S.D.N.Y.))

U.S. 800, 818 (1982); *Young v. County of Fulton,* 160 F.3d 899, 903 (2d Cir.1998); *Brown v City of Oneonta, N.Y., Police Dept.,* 106 F.3d 1125, 1130-31 (2d Cir.1997). The test is whether, in light of the clearly established federal right, it was objectively reasonable for the official to believe that his or her actions were constitutional. *Warren v. Dwyer,* 906 F.2d 70, 74 (2d Cir.), *cert. denied,* 498 U.S. 967 (1990).

An official is entitled to qualified immunity "if reasonable officials could disagree regarding whether the actions at issue violated the Constitution." Def. Mem. at 14. However, summary judgment will be granted on the basis of qualified immunity only if "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff, could conclude that it was objectively reasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) (*quoting Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987)). *See also Williams v. Greifinger,* 97 F.3d 699, 706 (2d Cir.1996); *Noguera v. Hasty,* 2000 WL 1011563,*18 (S.D.N.Y. July 21, 2000). Thus, "[i]f any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment." *Lennon,* 66 F.3d at 420.

Goolsby argues that she and Doe acted in an objectively reasonable manner. Def. Mem. at 15. Based on the verbal harassment which preceded the attack, Goolsby argues, "reasonable correction officers at least could differ as to whether these comments alone were concrete enough to create a substantial risk of harm to plaintiff of imminent physical attack." *Id.* On summary judgment it is necessary to show that *no* reasonable trier of fact could find that the defendants' actions were objectively unreasonable. In this case, where the only notice of potential harm to Desulma was a request for protection and an incident of verbal harassment, Goolsby was, at most, merely negligent in failing to protect Desulma from the inmates who attacked him. She responded quickly to the attack, separating the inmates and transporting Desulma to the medical unit. On these facts, no reasonable jury could conclude that it was anything but objectively reasonable for Goolsby to believe her acts did not clearly violate an established federally protected right. She is therefore entitled to qualified immunity.

IV. CONCLUSION

Because no genuine issue of material fact exists with respect to Desulma's claims, I respectfully recommend that defendant's motion for summary judgment be GRANTED.

**9** Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Richard M. Berman, 40 Centre Street, Room 201, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 150 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp.1995); Fed.R.Civ.P. 72, 6(a), 6(e).

S.D.N.Y.,2001.
Desulma v. City of New York
Not Reported in F.Supp.2d, 2001 WL 798002 (S.D.N.Y.), 50 Fed.R.Serv.3d 865

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.